[Crim. No. 267.    Third Appellate District.—August 26, 1914.]

## THE PEOPLE, Respondent, v. W. J. PARRISH, Appellant.

CRIMINAL LAW—RAPE—FEMALE UNDER AGE OF CONSENT—EVIDENCE OF SUBSEQUENT ACTS OF INTERCOURSE.—In a prosecution for rape upon a female under the age of consent evidence is admissible not only to prove the act of intercourse charged, but subsequent acts, though committed after she reached the age of consent.

ID.—INTERCOURSE WITH OTHERS—FIRST ACT BY DEFENDANT—HARMLESS ERROR IN ADMISSION OF EVIDENCE.—It is immaterial in such case whether the defendant or some other person first had intercourse with the prosecutrix, and hence she should not be allowed, over objection, to testify that the act charged in the indictment was the first act of intercourse, but error in admitting such testimony is not prejudicial in the presence of other evidence tending strongly to show the defendant's guilt.

ID.—MARITAL RELATIONS BETWEEN DEFENDANT AND HIS WIFE—EVIDENCE TO SHOW THEIR CONTINUANCE.—It is not prejudicial error to refuse to allow the defendant to elicit from the prosecutrix on cross-examination that the relations of the defendant and his wife were friendly, in order to show the improbability of the story of the prosecutrix that the defendant had daily intercourse with her for a year while his relations with his wife were unaffected, if he is permitted to show by his wife that his cohabitation with her was uninterrupted during such period.

ID.—CONDUCT OF DEFENDANT TOWARD PROSECUTRIX—ADMISSION OF TESTIMONY IN REBUTTAL.—Testimony as to the conduct of the defendant at different times toward the prosecutrix, offered in rebuttal instead of in chief, is not prejudicial if his conduct is otherwise shown.

Id.—Corroboration of Prosecutrix — Whether Necessary.—In a prosecution for rape upon a female under the age of consent, corroboration of the prosecutrix is unnecessary.

Id.—Improbable Testimony—Weight a Question for Jury.—A witness may testify in such prosecution that on one occasion the defendant had intercourse with the prosecutrix in the plain view of the witness, the weight of such testimony being for the jury.

Id.—Misconduct of District Attorney — Reference to Improper Matter.—In such prosecution it is misconduct, but not such as to require a reversal of the judgment of conviction, for the district attorney, in his argument to the jury, to remind them of a fact which the court in effect has previously told them they must not consider, and thereby seek to influence them by an unworthy appeal to class prejudice.

Id.—Evidence of Subsequent Acts of Intercourse—Purpose of Admitting—Instructions.—A charge to the jury that "you are further instructed, that evidence of subsequent acts of sexual intercourse between the defendant and the prosecutrix, and of improper familiarity on the part of the defendant toward and with the prosecutrix, both before and after the time charged in the information, is received and admitted in evidence solely to prove the disposition of the defendant herein toward G. and as having a tendency to render it more probable that the act of sexual intercourse charged in the information (indictment) was committed by the defendant on the person of said G., and is to be considered by the jury for that purpose only and for no other," is not so prejudicial as to warrant a reversal of the judgment.

APPEAL from a judgment of the Superior Court of Butte County and from an order refusing a new trial. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, and L. G. Faulkner, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of rape, having had sexual intercourse with one Gertrude Genant, a girl under the age of consent, and was sentenced to state's prison for the term of fifteen years. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

There is no distinct claim in defendant's brief that the evidence was insufficient to justify the verdict, although it is suggested that much of it is unworthy of belief. The claim is, rather, that defendant did not have a fair trial because of certain alleged errors in the rulings of the trial court and of the alleged misconduct of the district attorney in his address to the jury. Some objections are also urged to the instructions to the jury.

The prosecutrix was fifteen years old on March 4, 1912, and the sexual intercourse complained of was alleged to have occurred on or about June 20, 1912, at the county of Butte. Defendant and his wife conducted a boarding and lodging house in the city of Chico. The prosecutrix went to work for the defendant and his wife, about May 28, 1912, and continued in their service until some time in August of that year, when she left, returning after a week or ten days and remained until in January, 1913, when she went away again and was gone about three weeks, returning and remaining until some time in May, 1913, when she left finally because of some trouble she had with defendant's wife. The story of her conduct while at the Parrish House presents a case of shocking moral obliquity scarcely believable in one of her apparent intelligence. She testified that she at first roomed with another of the hired girls, one Annie Hansen, who left about three weeks after the prosecutrix went to work, and she slept alone until Olive Patterson came, she thought two or three weeks after the Hansen girl left. It was after the Hansen girl left and before the Patterson girl came that the first act of sexual intercourse with defendant is claimed to have taken place. She testified: That in the afternoon, toward evening, defendant, his wife, and some of the men boarders were assembled on the porch of the house; that some of the men, she did not know who, sent for beer and that she drank as much as eight glasses without becoming intoxicated. "After supper he (defendant) wanted me to go to my room with him, and I wouldn't do it, and he asked me if I had ever had intercourse, and I told him no, and he told me that he would show me how, that I was old enough to learn." She was asked if anything happened to her during the month of June, and answered: "After Annie Hansen left, Parrish came in there one morning. He came in and turned on the light, and pulled back the covers, and used me just as he

wanted to," which she explained to mean that he had sexual intercourse with her and that it happened before the Patterson girl came. As stated by the district attorney, "to show the disposition of the parties on the subject," and over defendant's objection, the prosecutrix testified that this sort of intercourse was kept up between them during her stay at the Parrish house and up to the time she finally left, "maybe it would be every other day, or maybe once or twice a day, or maybe every day, maybe once a week." Without objection, she testified as follows: "Q. And is it not a fact that you had sexual intercourse with several other men during that time? A. Yes, sir. Q. Where? A. At the Parrish House. Q. Always? A. Yes. Q. And did these young men room at the Parrish House? A. Yes." It appeared, in the course of her examination and cross-examination, that some six or seven men had these same relations with her, on account of which two of them are serving sentence in the state's prison. She was very searchingly cross-examined, the result being to show a depraved condition of mind, but not necessarily discrediting the incriminating features of her story. Some corroborating circumstances were shown, such as kissing and hugging of the prosecutrix by defendant, and one instance where the witness, Mrs. Marshbank, testified to having seen the parties in the act of copulation. This is said to have occurred in April, 1913, after the prosecutrix had passed her sixteenth year, and the evidence is made the subject of alleged error which will hereinafter be noticed. The defendant testified in his own behalf and flatly contradicted the prosecutrix as to his relations with her and denied ever having carnal knowledge of her. There was testimony by defendant's wife and by several lodgers and boarders to the effect that they never "saw anything out of the way" between the defendant and the Genant girl, and Mrs. Parrish testified that she saw nothing to arouse her suspicions that anything wrong was going on between them. It was very satisfactorily shown, and much reliance is placed upon the fact by defendant's counsel, that the Patterson girl came to the Parrish House not later than two or three days after the Hansen girl left, disputing the prosecutrix, who testified that it was two or three weeks. It will be observed, however, that she testified that she did not remember exactly how long it was, but she was positive that the first act of intercourse occurred

after the Hansen girl left and before the Patterson girl came, and while she was sleeping alone. It was for the jury to reconcile whatever conflict appeared in the testimony, and we find no warrant in the record for disturbing their finding upon the important fact that sexual intercourse took place between the parties as alleged in the indictment.

1. Defendant's first point is that it was error to allow the prosecution to prove not only the act charged but subsequent acts. It is admitted that, in *People* v. *Castro,* 133 Cal. 11, [65 Pac. 13], the contrary is held, but it is claimed that what was there said was *obiter,* and non-concurred in by one of the justices. Attention is called to the objection made to the testimony of Mrs. Marshbank, who testified to having seen defendant and the prosecutrix in the act, in May, 1913, after the prosecutrix had passed the age of sixteen. Upon this latter fact we cannot see that the matter of her then age would make any difference in respect of showing the carnal disposition of the parties for which alone it was admissible. It was while the prosecutrix was at the Parrish House, and was but one of an unbroken series of like acts from about May 20, 1912, for nearly a year. Upon the point raised, however, the rule is as stated in *People* v. *Castro,* 133 Cal. 11, [65 Pac. 13].

It is well settled that evidence of similar acts of sexual intercourse, both before and after the act charged, is admissible. (*People* v. *Gregory,* 8 Cal. App. 746, [97 Pac. 912]; *People* v. *Soto,* 11 Cal. App. 436, [105 Pac. 420]; *People* v. *Jacobs,* 16 Cal. App. 480, [117 Pac. 615]; *People* v. *Williams,* 133 Cal. 168, [65 Pac. 323]; *People* v. *Matthews,* 139 Cal. 530, [73 Pac. 416]; *People* v. *Keller,* 142 Cal. 624, [76 Pac. 500].)

2. Without objection from defendant, the prosecutrix testified to similar acts during the time she was at the Parrish House with several other men rooming there. Defendant says of this that ''necessarily the defense did not and in the nature of things would not object to such testimony'' inasmuch as ''it tended to show the degraded character of the prosecutrix and later on, as will appear from her cross-examination, she unblushingly admitted a course of conduct on her part with other persons which was and is almost unparalleled.'' Immediately following this testimony the following question was asked of the prosecutrix: ''Q. When was the first time that

you performed an act of sexual intercourse with any one?''
The question was objected to but was allowed, and the wit-
ness answered that the act charged in the indictment was the
first. It was strongly urged that this was very damaging
testimony and gravely prejudicial, citing *People* v. *O'Brien,*
130 Cal. 3, [62 Pac. 297] ; that it placed the defendant in the
position of having seduced the girl and having made a com-
mon prostitute of one of prior chaste character. It was im-
material whether defendant or some other person first had
sexual intercourse with the prosecutrix, and the objection
should have been sustained. It will be recalled that the
prosecutrix testified, without objection, that she told the de-
fendant that she never had sexual intercourse when solicited
by him and he replied that she was old enough to learn and
that he would teach her. She was then not under oath as
when she replied to the question now objected to. It was
error to allow the question, but, in view of the evidence tend-
ing strongly to show defendant's guilt, we do not think the
defendant was prejudiced by the answer.

3. Upon cross-examination of the prosecutrix the following
question was asked by defendant, objected to by the district
attorney and the objection sustained: ''Q. As you observed
it there, what were the relations of Mr. and Mrs. Parrish—
were they friendly—did they get along well, as you saw it?''
The objection was that the question was immaterial and in-
competent. The purpose of the question, as is claimed, was
to show the improbability of the prosecutrix' story of daily
sexual intercourse with defendant while his relations with his
wife were unaffected; that her story was ''a sexualogical im-
possibility.'' The defendant was permitted to show, by the
testimony of Mrs. Parrish, and did show very clearly what he
sought to show rather vaguely by inference in the question
objected to,—namely, that cohabitation was uninterrupted
between them. We discover no prejudicial error here. De-
fendant seems to have been a man of extraordinary virility
if the prosecutrix is to be believed.

4. Witness Millie Reese, over objection, was permitted to
testify in rebuttal that on one morning when she and the
prosecutrix were in bed together, the defendant came into
their room ''and pulled the covers down off their heads.''
The objection is that it was not admissible at all, but if ad-
missible should have been offered in chief as it was in no sense

rebuttal. Another witness in rebuttal, Mrs. Roberts, was asked whether or not she saw anything familiar or any improper conduct between Mr. Parrish and Gertrude Genant. An objection was overruled and she answered: "He seemed to think a lots of the girl and he was always picking at the girl and playing with her, and I have seen him pick her up in his arms." The testimony of these witnesses can hardly be said to be legitimate rebuttal, and such as it was should have gone in as part of the case in chief. But we cannot see that it was of much importance in view of the conduct of defendant otherwise shown.

5. The principal corroborating testimony was given by Mrs. Marshbank, above referred to, and is particularly attacked as wholly unworthy of belief. She testified that one afternoon defendant came into the room then occupied by her and the prosecutrix, invited the latter to go with him into the next room, which she did, and, without closing the door behind them and in plain view of witness, he forthwith had sexual intercourse with the girl. The alleged improbability is twofold—the shamelessness of defendant and gross immodesty of the witness in standing by as a looker-on. It is not essential that the prosecutrix be corroborated, and hence this testimony may be rejected. We may remark, however, that, in view of testimony given that the Marshbank woman was discharged for having been caught in like performances with a lodger of the Parrish House, and in view of the evidence as to defendant's immoderate passion, the jury, without much stretch of the imagination, might have believed the testimony of this woman, nor is it entirely improbable that this witness saw what she said she did. At any rate, it was admissible, and whether believable was with the jury.

6. Among the assignments of error is the alleged misconduct of the district attorney. When the prosecutrix was being examined in chief, she was permitted, over defendant's objection, to testify that Van Noy and Reitz (two of defendant's lodgers) had committed acts of sexual intercourse with her. "Q. And they are now paying the penalty for it? A. Yes, sir." The court sustained an objection to this question and answer and instructed the jury "not to consider it. Leave that entirely out of the case." When he was addressing the jury the district attorney, alluding to these other convictions, said: "Ask yourselves why the little fellow should suffer when

the man who runs the house—Mr. Carlin (interrupting) : Note an exception to this statement. There is no evidence on it at all. We ask the court now to instruct the jury, and reprimand the district attorney for this statement. The Court: Gentlemen of the jury, you will not consider anything that is not in the evidence. You will remember the evidence, and try the case solely, as I told you, upon the evidence and the instructions of the court and nothing else." It is complained "that the court declined to instruct the jury to disregard such statements, simply stating that they were to consider nothing but the evidence. That wasn't curing the error. It was dodging it and you will note that the district attorney continuing his argument follows up practically the same line and finally in the middle of page 200 says: 'Are you going to say that the big fellow who has the money and brings for counsel the shrewd, keen, clever, calculating Carlin, is going to get away with it? . . . twenty dollar tears, that's all.' " Testimony had gone before the jury without objection that the prosecutrix had cohabited with several men other than defendant. Had the question above noted stopped with naming Van Noy and Reitz defendant could not complain, but apparently the object was to enable the district attorney to get out the fact that these men were suffering imprisonment and thus lay the groundwork for his appeal to the jury against allowing the defendant to escape because he had money to employ able counsel. But the court had sustained the objection and the district attorney was guilty of grave impropriety in reminding the jury of a fact which the court in effect told them they must not consider, and seeking to influence them by an unworthy appeal to class prejudice. In a case of considerable doubt such conduct might require a reversal. In the present case, however, we feel assured that it did not result in a miscarriage of justice. It is fair to assume that the admonition of the court cured the error when first committed. In repeating it later on the record fails to show objection or a call upon the court to compel a withdrawal of the improper remarks.

7. People's instruction numbered 3 is called to our attention as having been "disapproved by our appellate courts and should not be given." It was upon the question of the credibility of witnesses. Appellant does not point out his ground of objection nor does he cite any case where such an instruc-

tion has been disapproved. In some cases the phraseology used may have required disapproval. We find no error in the form here adopted and given to the jury.

8. People's instruction numbered 6 was as follows: "You are further instructed, that evidence of subsequent acts of sexual intercourse between the defendant and the prosecutrix, and of improper familiarity on the part of the defendant toward and with the prosecutrix, both before and after the time charged in the information, is received and admitted in evidence solely to prove the disposition of the defendant herein toward Gertrude Genant and as having a tendency to render it more probable that the act of sexual intercourse charged in the information (indictment) was committed by the defendant on the person of said Gertrude Genant, and is to be considered by the jury for that purpose only and for no other." The objection urged is that this is a charge "upon pure questions of fact"; that all such acts were denied "and the court had no right to assume the facts." This instruction is a correct statement of the law governing the admissibility of the kind of evidence referred to and, no doubt, was intended to explain the limited purpose for which it is admissible, and we think the jury must have received it in that light alone. It would have been more in keeping with the strict rule forbidding the court from assuming the existence of facts which are controverted, had it declared the rule in the abstract. The instruction, as framed, was liable to be understood by the jury not only as indicating the purpose of the evidence of subsequent acts but that the evidence in fact had a tendency to make probable the commission of the act charged. Conceding error, we do not think there was such prejudice as to justify a reversal of the judgment. (Section 4½ of article VI of the constitution.)

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 22, 1914.