[Crim. No. 1747.   Second Appellate District, Division Two.—January 30, 1929.]

THE PEOPLE, Respondent, v. WILFRED BELL, Appellant.

Charles D. Swammer for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn and Warner I. Praul, Deputies Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendant was charged by information filed by the district attorney of Orange County with the crime of statutory rape. The jury returned a verdict of guilty and defendant appeals from the judgment and from the order denying his motion for a new trial.

The appellant assigns four reasons for reversal, as follows:

1. That the court erred in restricting the cross-examination of the complaining witness, and of her father.

2. That the trial judge was guilty of misconduct.

3. That the court gave an erroneous instruction.

4. That the district attorney was guilty of misconduct.

We shall dispose of the arguments in the foregoing order and turn our attention to the claim that appellant was not permitted to cross-examine the complaining witness or her father on pertinent questions. The record discloses that the prosecutrix, a girl of sixteen years, testified to the following situation: On the evening of May 26, 1928, she and appellant attended a party on board a boat called "The Vision," lying in Newport Harbor. They went aboard between 8 and 9 P. M.; went down below with the others, of whom there were about six, and talked and drank whisky. Some time before 12 o'clock the complaining witness became sick and went on deck. About five minutes later the appellant followed her. They sat and talked for a while. Appellant then went and got some blankets so that she could lie down. He then crawled in under the blankets with her and there accomplished the act of intercourse. During the direct examination of this witness she testified that just before the act "I was sick and I didn't know at first, but afterwards I was aware of it." On cross-examination she answered in response to queries as follows:

"Q. And you say when he first started to having intercourse with you that you were unconscious? A. Partly.

"Q. You didn't know what he was doing? A. Not at first."

Later, on cross-examination, counsel asked the question: "When did you start to become unconscious?" The district

attorney objected on the ground that counsel was assuming facts not in evidence, whereupon the court stated: "She testified that she didn't realize the fact of the act, but not meaning that she was unconscious mentally." In response to further queries the witness explained that she knew what was happening, but that she was in "a sort of stupor." There can be no doubt under this state of the record that the court was correct in his statement and in his ruling. While counsel had led her into the use of the term "unconscious" once on cross-examination, the trial judge was manifestly stating her testimony on direct examination and was eminently fair, inclining if anything, to defendant's interpretation of her language.

The next occurrence of which appellant complains took place when he asked the witness if she had not run away from home on one occasion. An objection was interposed and to the argument of defendant's counsel that he was to cross-examine the prosecutrix upon all angles, the court interposed:

"That is true as to the crime, but I don't think it is necessary to go into any other part of her life. I take it it doesn't make any difference what her past life has been." Before the objection was sustained counsel further stated that the witness had said that "this" (referring to the date of May 26th) "was the only time she left home, in May." We here parenthetically insert that the record does not bear out counsel's statement. Her testimony was that when she left her father's house earlier in May it was the first time she had left "to work." A similar objection was sustained to the query: "Is it not a fact that your father ordered you from home on May 15th?"

The last instance is so nearly akin and so aptly illustrates the purposes of the other interrogatories that we also set it down here. The question was asked of the father of the girl as follows: "Isn't it a fact, Mr. Johnston, that you told her she would have to leave home if she didn't quit running around with a certain girl in Balboa?" Counsel argues that in this character of action he should have been allowed the widest latitude compatible with the technical rules of evidence for the purpose of testing the credibility of the prosecuting witness. This statement is in apparent accord with the authorities (see *People* v. *Baldwin,* 117 Cal. 244

[49 Pac. 186]), even in those cases where the female is under the age of consent. But neither the reputation nor the character of the witness for chastity was involved in this action. The proper method to have attacked her credibility was to have directed questions to her or her father which had some bearing upon her reputation or character for truth, honesty, and integrity. We do not perceive how her past conduct and home life could have a tendency to disprove her statements concerning the events of May 26th. A similar ruling was announced in *People* v. *Casanova*, 54 Cal. App. 439 [202 Pac. 45]. (See, also, 27 Cal. Jur. 131.)

We have already noted the remarks of the court which appellant says constitute misconduct and prejudiced the defendant in the minds of the jury. It is to be observed in the first instance that no assignment of misconduct was made by appellant nor was the judge's attention called to the statements so that he might correct the harm, if any was done. In the second place, we do not put the same construction upon the remarks of the court as does the appellant. As we have already pointed out, the trial judge was in accord with the record when he said that the witness had not testified that she was unconscious, and he was stating the law substantially when he said: "I don't think it is necessary to go into any other part of her life. I take it it doesn't make any difference what her past life has been."

Appellant's next attack upon the judgment is on the ground that the court erred in giving the following instruction:

"You are further instructed that evidence of other acts of sexual intercourse between the defendant and the prosecutrix, and of improper familiarity on the part of the defendant towards and with the prosecutrix, both before and after the time charged in the information, is received and admitted in evidence to prove the adulterous disposition of the defendant, and as having a tendency to render it more probable that the act of sexual intercourse charged and relied on in the information was committed, and for no other purpose." Our attention is directed to the case of *People* v. *Haugh*, 90 Cal. App. 354 [265 Pac. 891], where the giving of almost the identical instruction was held erroneous for the reason that there was no testimony of any acts of sexual intercourse after the one complained of and the testimony

of the prosecutrix was not substantiated by any other evidence, hence her statement of other acts of intercourse did not have a tendency to render more credible her own testimony. So here we have no testimony concerning acts of intercourse prior to the one complained of and no corroboration of her testimony of subsequent occurrences, except the testimony of several witnesses to the admission made by appellant that he had sexual intercourse with her and had contracted a venereal disease from her. This admission is not sufficiently broad to cover more than the one act, hence we fail to see how the testimony of the prosecutrix to the acts after May 26th could strengthen her statements concerning the affair of that date or tend to establish more firmly the possession of an adulterous disposition by the appellant.

During the argument of the district attorney after reciting his version of the facts happening on the boat, he said: "There has been no denial of any of the facts in this case; not a denial of a thing all the way down the case. The witnesses who came on the witness stand all were to tell you that at some time or another the girl said she was nineteen years of age instead of sixteen; and the girl herself told you that she told the boys she was seventeen." Again, he argued, " . . . there is not one scintilla of evidence here which shows to you, or shows to me, or shows to anyone else that he did not have sexual intercourse with that girl." Lastly he asserted: "And yet that is the story which has been presented, and there is not one scintilla of evidence— and by a 'scintilla' I mean there is not one bit of evidence, which contradicts that story. Not a bit of it. The defendant has a right to keep his mouth shut, and it is up to us to prove that he is guilty, and, ladies and gentlemen, in this case we have proven absolutely that he is guilty in this case. You must take the evidence as it is received." The appellant asserts that the first and last of these statements of the district attorney constitute misconduct of such a serious nature that it was not necessary for him to object at the time or assign them as misconduct and thus give to the court and counsel an opportunity to rectify the damage if any was done. We cannot agree with this contention. The argument was short and concise. We have quoted the second statement of the

district attorney for the purpose of more faithfully portraying the general tenor of his remarks. The thought which he endeavored to impress upon the jury was that there was no contradiction in the evidence of the story of the prosecutrix relating to any of the circumstances of May 26, 1928, and that the admission of the defendant corroborated her in that particular. His argument, as it appears to us from the record, was free of rancor or any attempt to take undue advantage of the defendant. It cannot be classed with those of the overzealous prosecutor. And while, strictly speaking, the word ''denial'' used by him in the first quoted statement connotes a disavowal by the defendant himself, we do not believe that the jury understood that the attorney was directly or indirectly calling attention to the refusal of the appellant to testify. He was directing attention to that fact in the last statement, but it was an express declaration that such was his right. We fail to appreciate now the appellant could have been prejudiced by the assertion of that which was his right. At least it is apparent from the entire argument that no prejudice was suffered which could not easily have been cured and the evil eradicated by timely objection.

We must now determine whether the error found to have been committed in the giving of the instruction already discussed, requires a reversal of the judgment. We have already observed that no testimony was introduced by the appellant to contradict any of the circumstances related by her on the evening in question, but that in fact he admitted before several persons the commission of the act. The jury were instructed that the crime charged is one ''easy to charge and difficult to disprove'' and that they should view with great caution ''the testimony of a child of tender years.'' With this instruction before them it is difficult to believe that the jury gave any more credence to the testimony of the prosecutrix by reason of her statement that there were two or three other acts of sexual intercourse. It is much more reasonable to believe that they were guided in their determination by her uncontradicted story corroborated by an admission, and in particular, that part of the admission wherein appellant charged her with having transmitted to him a venereal disease. Under all the circumstances we

cannot say under section 4½ of article VI of the constitution that a miscarriage of justice has occurred.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.