[Crim. No. 2323. Second Appellate District, Division One.—April 17, 1933.]

THE PEOPLE, Respondent, v. JOE VAUGHAN, Appellant.

Orbison & Irwin for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

DESMOND, J., *pro tem.*—The defendant was convicted of violating section 288a of the Penal Code in relation to a girl eleven years old; also upon another count of the same information of violating section 288 of the Penal Code involving another girl of the same age. Attached to the verdict and ordered filed by the court was a slip of paper reading as follows: "If admissible, the jury would like to recommend leniency." Motion for a new trial was denied and defendant sentenced on each count to San Quentin State Prison for the term provided by law, one sentence to follow the other.

The defendant claims upon his appeal that the evidence was insufficient to support either verdict, pointing out that there was no corroboration of the testimony of either girl as to the commission of the acts of which he was found guilty. It is not necessary, in order to sustain conviction of either of these offenses, that the testimony of a child of tender years be corroborated, since such a child cannot be classed as an accomplice. (*People* v. *Roy Johnson*, 115 Cal. App. 704 [2 Pac. (2d) 216].) It is for the jury, who see the child and hear her uncorroborated story, to say whether she is telling the truth. In this case the jury passed favorably upon that question in the case of both girls, but we feel that it is proper to say, from a mere reading of the record and with no opportunity to appraise the character and intelligence of the witnesses, that certain phases of the incidents related seem almost beyond belief. In the case of the first girl the testimony was as follows: That the appellant, a neighbor of many years' acquaintance, undertook to care for the eleven year old girl and her four year old brother in their home on the night of January 28,

1932, while their mother in company with appellant's wife attended a church service, the father of the children, a police officer, being employed at night. The appellant and his wife were positive in their testimony that the occasion when appellant had charge of the children was February 11th instead of January 28, 1932, but whichever was the correct date there is no question that on a certain evening the appellant had the opportunity to commit the crime, if he were so minded, since he was in the house with the two children for a period of approximately three hours. The girl testified that after listening to the radio and putting her baby brother to bed, she went to her room and to bed, bidding appellant "good night"; that some time later she awoke in the darkness, found the bedclothes removed from her, the lower part of her pajamas pulled down below the knees and appellant upon his knees beside the bed committing the offense charged; that at just this instant, or possibly before, and perhaps awakening the girl, the doorbell rang and appellant left the bedroom, answered the doorbell and admitted the aunt of the little girl, who had called to see her mother. The aunt, according to her testimony, rang the bell that night at about 9 o'clock, stayed five or ten minutes, talked to the defendant and to the girl as she lay in bed in the next room and heard the girl say, as she looked around the partly opened door, "Good night, Aunt Clara", as the aunt took her departure. No complaint was made to the aunt of mistreatment nor was there any request by the girl that her aunt stay with her until her mother came home. There was no report of any improper conduct and no complaint to her mother that night, next day or during many months thereafter; in fact, not until after school started in September, 1932. Under these circumstances, while it cannot be said that the commission of the act charged is inherently improbable, for men of depraved instincts and perverted desires seize opportunities as they are offered, still we find it hard, if not impossible, to believe that a child so assailed in the darkness of the night could at practically the same instant carry on an ordinary conversation with her aunt and light-heartedly bid her "good night" with no complaint of mistreatment so gross in its nature, and no attempt to hold until the arrival of her

mother, her aunt so providentially at hand as her deliverer and guardian. The testimony of the child was that she was asleep when her mother returned. Her failure to tell her mother next morning of what had occurred and her complete silence on the subject for many months thereafter was not explained at the trial, and to us, as we read the record, is inexplicable.

In regard to the other charge upon which conviction was had, prosecutrix testified that on the way to the beach and six or seven times on the way home from the beach, appellant mistreated her in the manner described in section 288, as she rode in the same seat with him and the other prosecuting witness, each of the girls taking turns steering the car as appellant drove. The testimony of this complaining witness was not corroborated as to a single event by the other girl, who was present during all the time, and no complaint was made to anyone of mistreatment until a later date. These girls have lived for years within a few houses of each other and of the appellant and have grown up as playmates. While it cannot be said that the story of the second prosecutrix is as susceptible of doubt as that of the other girl, we cannot but wonder how these repeated attacks could be made upon her without being observed by her playmate sitting on the same seat of the automobile immediately next to her.

The appellant claims to have been aggrieved by various rulings of the trial court on questions involving the admission and rejection of evidence. Most of these claims, we find, are without merit, but · that is not true of all. ▉ The prosecutrix under count I gave testimony of various lewd acts committed by the defendant upon her person at different times. One of the events, as so described, occurred in the late summer of 1932, when appellant took her to a neighboring beach on a fishing trip. Counsel for defendant asked this girl: ''You were not afraid of him at that time, were you?'' To this question the court sustained an objection on the ground that it was immaterial. We believe great latitude should be permitted in cross-examining the adverse witness in cases of this character, painful as that process may be, so that the jury may have all the facts before them in determining the truth or falsity of the recital. One of these facts might easily be the

mental attitude of a prosecutrix toward a defendant and we feel, therefore, that a question as to the attitude of this prosecutrix toward this defendant at the time of the proposed fishing trip was a pertinent inquiry that should not have been prohibited. In view of the bestial treatment which the witness, according to her testimony, had previously received from the defendant, we feel that her state of mind at the time of a proposal to be alone with him for a period of several hours might well be inquired into, for from that mental attitude, connected with other facts, the jury might determine the truth of her testimony as to the prior event. If, as respondent concedes in its brief, it might have been proper for counsel to ask the witness if she went with the defendant freely and voluntarily, then there is no reason why the question as framed should not have been asked, for in its essence it amounts to the same thing. It was error, therefore, to sustain the objection to this question.

Mrs. Vaughan was asked in regard to this girl: "What was her condition as to being downcast or joyous, happy or sorrowful at the time you saw her immediately upon her return (from the fishing trip)?" An objection to this question on the ground that it was immaterial was sustained. A week following the first trip, the defendant returned from another fishing excursion with both girls. As to this event, Mrs. Vaughan was asked: "What was their demeanor and attitude as to being happy or otherwise?" Her answer, "Happy", was then ordered stricken on the ground that the question was wholly immaterial.

If either girl on either occasion had appeared flushed, nervous, distraught or frightened, undoubtedly the prosecution, if witnesses had been available, would have claimed the right, and we believe properly, to bring out that fact as having a material bearing on the matter at issue. We see no reason, therefore, why the defendant may not inquire into the physical appearance or *apparent* mental attitude of the girls at a time which may almost be fixed as being within the rule of *res gestae*. The inquiry in the first question as to "condition" and in the second as to "demeanor" both relate to physical appearance. (*People* v. *Wong Loung*, 159 Cal. 520 [114 Pac. 829]. See, also, 8 Cal. Jur., p. 153, sec. 235; 10 Cal. Jur., p. 978, sec. 236.)

■ The trial court also sustained an objection to an inquiry as to why the little girl did not complain to her aunt on the night of January 28th of defendant's abuse just committed, the record reading as follows: "Q. He didn't say anything about not telling anybody? A. No. Q. Well can you tell me why you did not tell your auntie? Mr. Sullivan: Objected to as immaterial. The Court: Sustained."

It is our opinion that if the query so propounded by defendant's counsel was not in the minds of the jury that tried this case it should have been, and therefore an answer to the question should have been permitted. In the case of *People* v. *Costa*, 24 Cal. App. 739 [142 Pac. 508], the defendant, found guilty of ravishing a girl fourteen years of age, obtained a reversal upon rulings that excluded evidence bearing on the possible reason for withholding complaint for a period of two months, or until the prosecutrix came into the hands of the police. Incidentally, the record indicates that no complaint was made in the instant case until both these girls came to the attention of Juvenile Hall authorities. The Costa case and the present case present points of dissimilarity, but the opinion in that case contains certain comments which seem applicable to our problem (p. 740): "On cross-examination she was questioned as to whether she at the time said anything to her mother about the matter, when she first told her mother of what defendant had done, and whether she told any one about the matter, to all of which questions objections were sustained upon the ground that the evidence sought to be elicited was immaterial and not cross-examination. . . . " (p. 742): "The mere charge of an offense so heinous in nature is well calculated to arouse the feelings of the jury against the accused and excite its sympathy for the prosecutrix, particularly when the latter is a child of fourteen years of age, thus placing the defendant, however innocent, at the mercy of her evidence. . . . And in *People* v. *Baldwin*, 117 Cal. 249 [49 Pac. 187], it is said: 'It will be sufficient to say, in a general way, that in a case of this character the very widest latitude compatible with our somewhat technical and restricted rules of evidence should be allowed the defendant in his cross-examination of the witnesses of the People. More especially is this true with

272

reference to the prosecuting witness. In this class of prosecutions the defendant, owing to natural instincts and laudable sentiments on the part of the jury, and the usual circumstances of isolation of the parties involved at the commission of the offense, is, as a rule, so disproportionately at the mercy of the prosecutrix's evidence, that he should be given the full measure of every legal right in an endeavor to maintain his innocence.' See, also, *People* v. *Christy,* 65 Hun, 352 [20 N. Y. Supp. 278]; *People* v. *Mitchell,* 5 Cal. App. 45 [89 Pac. 853]; *People* v. *Howard,* 143 Cal. 316 [76 Pac. 1116]. The rulings of the court in excluding the evidence were not only error, but highly prejudicial to the substantial rights of defendant. The court should have permitted the fullest investigation as to the circumstances, motive, and reason for withholding any statement of the offense for a period of two months and then telling the officers who had her in custody under arrest. As said in *People* v. *Howard,* 143 Cal. 316 [76 Pac. 1116] : 'If she was testifying to the truth, such investigation would not have injured the cause of the prosecution. If she was testifying to a falsehood, the defendant should have been allowed in every reasonable way to show it.' '' (See, also, *People* v. *Degnen,* 70 Cal. App. 567, 590 [234 Pac. 129].)

In view of the foregoing, we believe the rulings of the court upon the questions propounded were prejudicially erroneous.

Defendant complains bitterly because all fifteen of his requested instructions were refused, seven of them ''except as otherwise given''. Among those definitely refused without such exception noted were the following:

No. IV : ''The court instructs the jury that the evidence of children must be scrutinized with great care and in determining the credibility of such evidence, you may take into consideration the probability or improbability of such evidence, whether the children testifying tell a straight story or contradict themselves, whether their testimony is corroborated or otherwise, whether their testimony is consistent with the physical facts as shown by the evidence, whether such witnesses have been coached or otherwise, whether their testimony shows a knowledge of things and the use of words beyond the knowledge of children of such

tender years, and from these, together with all the other rules laid down in these instructions for your guidance, determine the weight, if any, you will give to such testimony.''

No. V: ''By reason of the fact that charges of the nature involved in this case can easily be made and are often not easy to disprove, I instruct you that it is your duty to treat with great care and caution the testimony of the complaining witnesses (here naming them). The fact that the charges here made, however, are ones not easy to disprove should not deter you from rendering a verdict of guilty in the event you are convinced by the evidence beyond a reasonable doubt that the defendant is guilty as charged. On the other hand you are not to be moved by passion, sympathy or prejudice to find a verdict of guilty on any count of the information and unless you are convinced beyond a reasonable doubt from the evidence that the defendant is guilty as charged on one or more of the several counts of the information, you should find the defendant not guilty.''

The learned trial judge at the time he denied defendant's motion for a new trial stated as his reason for refusing to give these instructions that they were cautionary, evidently viewing them as prohibited by section 19, article VI of the Constitution, providing that judges shall not charge juries with respect to matters of fact. There is authority for this position. (*People* v. *Anthony*, 185 Cal. 152, 160 [196 Pac. 47].) However, a review of cases of this type would indicate that the courts generally have been reluctant, where testimony of the complaining witness is uncorroborated, to disregard the observation made by Chief Justice Murray in deciding the Benson case [*People* v. *Benson*], 6 Cal. 221 [65 Am. Dec. 506], involving a child of thirteen years: ''From the days of Lord Hale to the present time, no case has ever gone to the jury, upon the sole testimony of the prosecutrix, unsustained by facts and circumstances corroborating it, without the court warning them of the danger of a conviction on such testimony.'' For example, we find the following in *People* v. *Caldwell*, 55 Cal. App. 280, 298 [203 Pac. 440, 448]: ''Cautionary instructions of this character are proper in rape cases, under many decisions, either when the prose-

cutrix is a child of tender years or when her testimony is uncorroborated.''

And in the case of *People* v. *Scott,* 24 Cal. App. 440 [141 Pac. 945, 947], involving a moral offense against a girl about fourteen years old, the court says: ''For reasons readily suggested it is entirely proper for the court to caution the jury to weigh the testimony of the prosecutrix with the utmost care that no wrong be done the defendant.'' In *People* v. *Currie,* 16 Cal. App. 731 [117 Pac. 941], where the girl was under the age of sixteen years, the following appears: ''We think the court went far enough in its cautionary signal to the jury to awaken in their minds the importance of carefully scrutinizing the testimony of the prosecuting witness.'' In that case the following instructions were given (p. 736): ''That a charge of this nature is particularly difficult for a defendant to clear himself of. No charge can be more easily made, and none more difficult to disprove. From the nature of the case, the complaining witness and the defendant are generally the only witnesses. You should be satisfied to a moral certainty and beyond a reasonable doubt, that the case is made out by witnesses and corroborating evidence, if any, before you find the defendant guilty, if you find him guilty. . . . That the law does not require in this character of case that the prosecuting witness be supported by another witness or other corroborating circumstances, but does require that you examine her testimony with caution.'' While rape was charged in each of these cases, the reasoning and remarks of the various judges are equally applicable to cases of indecent and lewd treatment of young children, such as we are now considering.

The author of the note appearing in 60 A. L. R. 1134 says on this subject: ''It is customary to caution the jury that because of the difficulty of disentanglement from so heinous an imputation, as compared with the ease with which it can be fastened on reputable persons, the utmost discretion should be exercised to avoid attaching undue weight to the uncorroborated accusation of a prosecutrix.''

That the giving of the instructions in question, even though cautionary, would not have been ground for reversal appears from *People* v. *Hewitt,* 78 Cal. App. 426, 440 [248 Pac. 1021], and cases there cited.

■ Appellant also complains of certain instructions of the court given on its own motion. Among them is the following: "Solely in so far as Count I is concerned, testimony has been introduced by the prosecution tending to prove other acts of lewd and lascivious conduct of the defendant with said prosecutrix other than the act relied upon for conviction under Count I. This evidence is introduced for the purpose of proving and it will be for you to determine whether it does so prove the lewd and lascivious disposition and tendency of the defendant to commit lewd and lascivious acts. This evidence is not introduced to prove distinct offenses, but corroborative evidence tending to support the one specific offense for which the defendant is tried."

The characterization by the court of the testimony relating to other acts as "corroborative evidence tending to support the one specific offense" is objectionable under the rule set up by section 19, article VI, of the Constitution. (See 8 Cal. Jur., secs. 344, 345, p. 286 et seq.) The instruction seems objectionable also on grounds referred to in *People* v. *Haugh*, 90 Cal. App. 354, 356 [265 Pac. 891]. (See, also, *People* v. *Bell*, 96 Cal. App. 503, 508 [274 Pac. 393].)

Discussion of other points urged by appellant seems unnecessary in view of our herein expressed conclusions.

Judgment and order reversed.

Conrey, P. J., and York, J., concurred.