[Crim. No. 3867. Second Dist., Div. One. Sept. 14, 1945.]

THE PEOPLE, Respondent, v. ARTHUR SMITTCAMP, Appellant.

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, and Carl S. Kegley, Deputy Attorney General, for Respondent.

WHITE, J.—Appellant was charged in an information filed by the District Attorney of Los Angeles County in counts I and III with violations of section 288 of the Penal Code, and in count II with statutory rape. The jury returned verdicts of guilty as to counts I and III, and, having failed to agree upon a verdict as to count II, the court declared a mistrial as to that count and on its own motion dismissed it "in the interest of justice." Thereafter a motion for a new trial as to the counts upon which defendant was convicted was made and denied. Thereupon, proceedings were suspended as to said counts and the defendant was granted probation for a period of five years on condition that he serve the first year of such probationary period in the county jail. From the order denying his motion for a new trial, defendant prosecutes this appeal. Defendant also attempts to appeal from "the judgment" but, inasmuch as no judgment was pronounced, the attempted appeal therefrom must be dismissed.

The prosecutrices were two sisters aged nine and thirteen years at the time of the alleged commission of the crimes charged in counts I and III of the information. Defendant was then 63 years of age and for some five years prior to his arrest had lived on Sherman Way in Los Angeles County. During the latter part of this period he was a partner of one Mrs. Hendrick in the turkey-raising business. Upon her death, through the provisions of her will, he became the sole owner of such business.

When the defendant first took up his aforesaid residence,

the two prosecutrices, their brother and parents lived nearby on Sherman Way. At that time the children frequented the defendant's place of business. The family of the prosecutrices later moved to another part of the valley, but continued to see defendant when they would purchase turkeys. After the death of defendant's partner, the mother of the prosecutrices acted as defendant's bookkeeper, and, in the summer of 1943, established a victory garden on defendant's property. From about December, 1942, to January, 1944, it was customary for the children to come to his place, being brought there by one or the other of their parents and left to work in the aforesaid victory garden, occasionally to help the defendant, but more often for him to take care of them because of their mother's absence from home. During this period, the defendant often, upon request or permission of their mother, called at school for the children and would keep them at his place until dinner time when he would bring them home.

The acts complained of, and the other improper acts about which the prosecutrices testified, are alleged to have been committed between May 2d (the date on which the act charged in count III was alleged to have been committed) and September 6, 1943 (the date on which the act charged in count II was allegedly committed).

The father of the prosecutrices and defendant had a disagreement as to the ownership of the money represented by a certain check; and, thereafter, defendant's arrangement to take his evening meal at the home of the prosecutrices was terminated about the 12th of January, 1944. Defendant testified that, at that time, he was "through with" the whole family. In February, 1944, some nine months after the alleged commission of the first offense complained of, while defendant was out of the city, the prosecutrices complained to their parents concerning his conduct.

█ The first ground relied upon by appellant for a reversal is that the court erred when the jury was instructed that:

"Evidence of other acts of sexual intercourse between the defendant and the prosecutrix, and of improper familiarity on the part of the defendant towards and with the prosecutrix, both before and after the time charged in the information, is received and admitted in evidence to prove the *adulterous disposition* of the defendant, and as having a tendency to render it more probable that the act of sexual intercourse

charged and relied on in the information was committed, and for no other purposes.'' (Emphasis added.)

Respondent insists that ''unquestionably the instruction given was directed toward the second count,'' which charged the offense of rape, and, for that reason, even if conceded to be erroneous, was harmless error in view of the fact that upon the jury's failure to arrive at a verdict thereon said second count was dismissed by the trial court.

However, in a prosecution such as the one with which we are here concerned, the word ''adulterous'' cannot be regarded in the light of the narrow or technical definition of ''adultery'' (Pen. Code, §§ 269(a) and 269(b); Civ. Code, § 93), but it must be given the broader and more generally accepted meaning which includes lewdness or unchastity of thought as well as of act. Therefore, the language contained in the challenged instruction that such evidence is ''received . . . to prove the *adulterous disposition* of the defendant'' must be taken to mean that such evidence is received to establish the fact that the defendant was given to licentious and unchaste thoughts, and therefore possessed of a tendency, desire and willingness to commit such lewd and lascivious acts as those denounced by section 288 of the Penal Code, as well as those described by section 261 of the same code. In the absence of any language directly and positively advising the jury that such evidence was not to be considered by them except as to the offense of rape charged in count II of the information, the conclusion is inescapable that the jurors were authorized to, could and probably would, infer from such evidence that it was more probable the defendant committed the acts charged in counts I and III as well as the act charged in count II of the information. It would challenge credulity and do violence to reason to assume that the instruction as given did not influence the verdicts returned as to counts I and III. Therefore, respondent's argument that, because the court dismissed count II after the jury had considered the same and failed to reach a verdict thereon, precludes consideration of the questioned instruction on the instant appeal from the order denying a new trial as to counts I and III is not impressive.

By a long line of authorities it is now established as the law in this state that, in prosecutions for sexual offenses, evidence of other like offenses or acts of improper familiarity,

illicit intimacy or relations between the parties, prior or subsequent to the act charged in the information relied upon by the prosecution, is admissible as *corroborative evidence* where they tend to show a continuous illicit relationship. Never is such evidence of "other acts" admissible as independent substantive offenses, upon any of which a conviction can be had. It is only after the prosecution has selected and designated some particular act allegedly committed on a date certain and upon which the prosecution has elected to rely for a conviction of the defendant and has *introduced* evidence in support of the specific charge selected and designated that evidence of "other acts" may be received as *corroboration of the testimony* introduced to prove the commission of the one specific offense charged in the information. ▮ And necessarily, a jury must be definitely and correctly instructed as to the limited purpose for which such evidence is received. In a long line of cases, instructions predicated upon the rule we have just referred to have been upheld. (*People* v. *Mathews,* 139 Cal. 527, 530, 531 [73 P. 416] ; *People* v. *Delgado,* 37 Cal.App. 807, 809 [174 P. 24] ; *People* v. *Harlan,* 29 Cal. App. 600, 604 [156 P. 980] ; *People* v. *Soto,* 11 Cal.App. 431, 436 [105 P. 420] ; *People* v. *Parrish,* 25 Cal.App. 314, 322 [143 P. 546] ; and *People* v. *Slaughter,* 33 Cal.App. 365, 377 [165 P. 44] ; in each of which last three cases hearing in the Supreme Court after judgment in the District Court of Appeal was denied; *People* v. *Koller,* 142 Cal. 621, 623 to 626 [76 P. 500], and some twenty-eight decisions of the District Court of Appeal in which this last cited case is mentioned with approval; *People* v. *Troutman,* 187 Cal. 313, 319 [201 P. 928].) In these cases, however, the testimony of the prosecutrix was corroborated by circumstances or by testimony other than her own.

▮ As we have indicated herein, evidence of "other acts" to prove that the parties are adulterously, incestuously or lasciviously inclined is admitted only as corroborative evidence tending to support the one specific offense for the commission of which the defendant is on trial. ▮ Had there been testimony other than that given by the prosecutrices themselves as to the "other acts," then there would be corroboration of the prosecutrices' testimony as to such acts, and the purpose and intent of the rule of law permitting such corroborative testimony would have been accomplished, viz.:

that the jury would have been entitled to consider such evidence as corroborative of the prosecutrices' testimony concerning the specific offenses for which the defendant was being tried. In such a situation the instruction given might not be prejudicial. But, in the absence of any testimony other than that given by the prosecutrices themselves as to "other acts," their testimony in that regard amounted only to an attempt to corroborate their own testimony. And if their testimony was not substantiated by any other evidence direct or circumstantial then, as was said in *People* v. *Haugh*, 90 Cal.App. 354, 356 [265 P. 891], since the prosecutrix' testimony "was not substantiated by any other evidence, either circumstantial or otherwise . . . in the case at bar *her statement that there were other acts of intercourse or improper familiarity on the part of defendant towards and with the prosecutrix would not have any tendency to render more credible her testimony* that the act of sexual intercourse charged and relied on in the information was committed. In other words, the only testimony connecting the defendant with the alleged crime is the testimony of the prosecutrix herself; and such evidence on the part of the prosecutrix could not be said in any way to render the guilt of the defendant more probable than if she had testified that the act had been done but the once charged in the information." (Emphasis added.)

The decision in *People* v. *Bell*, 96 Cal.App. 503, at pages 507 to 509 [274 P. 393], cites *People* v. *Haugh, supra,* approvingly and holds that an instruction identical with the one before this court in the instant action was erroneous, saying that the testimony of the prosecutrix as to subsequent acts could not strengthen her statement concerning the act complained of *"or tend to establish more firmly the possession of an adulterous disposition by the appellant."* (Emphasis added.) However, in the Bell case such error was held not to have caused a miscarriage of justice, in view of the uncontradicted testimony that defendant had in the presence of several persons admitted that he had committed the one act alleged in the information.

In *People* v. *Vaughan,* 131 Cal.App. 265, 275 [21 P.2d 438], an instruction similar to the one in the case at bar was characterized as ". . . objectionable also on grounds referred to" in *People* v. *Haugh* and *People* v. *Bell, supra.*

While not conceding that the instruction given in the instant case is either erroneous or prejudicial, respondent de-

votes a considerable portion of its brief to the claim that the clear implication in the Haugh, Bell and Vaughan cases, *supra,* is that, had there been evidence other than the testimony of the prosecutrix as to "other acts," the instruction therein would not have been considered erroneous; and, if the testimony of the prosecutrix had been corroborated by other evidence as to the commission by the defendant of the specific crime with which he was charged, the instruction complained of might not have been prejudicial. We therefore proceed to an examination of the record to determine the verity of appellant's claim that the record is barren of any evidence, other than the testimony of the prosecutrices, to prove the commission by the defendant of any of the "other acts" relied upon by the prosecution, or the correctness of respondent's claim that there is in the record corroboration of the "stories of the two girls," both as to the crimes charged and "other acts" referred to in the instruction now under consideration.

We pause here to say that what we have herein stated regarding "corroborative evidence" or "corroboration" bears no reference to the specific acts charged in counts I and III, because it is established law in this state that, in a prosecution under section 288 of the Penal Code, the prosecutrix, being under the age of 14 years, could not be an accomplice, and no corroboration of her testimony as to the specific act charged against the defendant in the information is necessary (*People* v. *Johnson,* 115 Cal.App. 704, 706 [2 P.2d 216]; *People* v. *Vaughan, supra,* at p. 267).

Insofar as count I is concerned, there is in the record no testimony whatsoever, either as to the specific act relied upon for conviction or as to the "other act," except the testimony given by the prosecutrix herself and that given by the defendant in complete denial thereof.

In an effort to avoid the application of the rule herein announced upon the authority of the Haugh, Bell and Vaughan cases, *supra,* respondent relies upon certain portions of the defendant's own testimony as corroborative of the commission by him of the "other acts," concerning which the prosecutrices testified, which testimony, as set forth in the questioned instruction, was received to "prove the adulterous disposition of the defendant." The specific portions of defendant's testimony upon which reliance is placed by re-

spondent are with reference to: (1) the receipt by defendant of an amorous letter (Defendant's Exhibit A) from one of the prosecutrices; (2) defendant's writing and delivering to said prosecutrix of several notes but of an entirely different nature and character; (3) the custom of the two prosecutrices to kiss defendant good night almost every night when he was taking his evening meal with them and their parents, and defendant's failure to discontinue or change such custom upon his receipt of the aforesaid letter (Defendant's Exhibit A); (4) conversations between one of the prosecutrices and defendant, in which she told him that another man (a friend of her father) had hugged and kissed her, played with her and done ''many things'' to her, and to which the defendant replied ''I don't think it was a very nice way to play, and she promised me she would cut it out,'' and also that defendant told her she should talk to her mother or father (not defendant) about it and that he ''didn't want to get into any trouble'' over it; (5) defendant's failure to tell the girl's father immediately about his own receipt of the letter (Defendant's Exhibit A), and his waiting to do so for about three weeks; and (6) defendant's failure to tell the girl's father about the conversations between them respecting her statement that another man had taken liberties with her until he had obtained the daughter's permission to do so, which was a ''short time'' after the occurrence of the conversation. While defendant's testimony in such respects undoubtedly might show a lack of judgment and proper concern for the welfare of this adolescent girl who was so often left in his care, it cannot be held to constitute an admission by defendant of the commission by him of any of the acts concerning which the prosecutrices testified, nor can an inference that he did commit any such act properly be drawn from such testimony. The law presumes a person is innocent of crime or wrong (Code Civ. Proc., § 1963, subd. 2).

Further, as evidence of ''other acts'' corroborating the testimony of one of the prosecutrices, the respondent relies upon the testimony of her sister respecting the act charged in count II of the information in which the former appeared as the prosecutrix, concerning which the jury was unable to reach a verdict and which was later dismissed by the trial court ''in the interest of justice.'' Obviously this could not be one of the ''other acts,'' because it was the act specifically charged in count II and relied upon for a conviction upon that

count. The jury was therefore authorized to consider it only in relation to the guilt or innocence of the defendant upon the charge contained in that count. Another answer to respondent's claim in this regard is that by their failure to agree upon a verdict as to said count II, it is evident the jury did not believe that the act specified in that count was committed by the defendant.

The record in the case with which we are here concerned, therefore, presents a situation similar to those existing in the Haugh, Bell and Vaughan cases, *supra,* where, as in the instant case, the only evidence of "other acts" was the prosecutrices' own testimony which could in no way add to, strengthen or render more creditable their testimony that the acts charged and relied upon in the information for conviction were committed, and such evidence on the part of the prosecutrices could not be said in any way to render the guilt of the defendant or his possession of an adulterous disposition "more probable" than if they had testified only to the specific acts charged in the information.

It is next contended by appellant that the court erred in its decision upon a question of law which arose during the trial. In that regard, it appears that appellant testified that one of the prosecutrices had stated to him that another man who was a friend of her father had taken offensive liberties with her person; that she had informed her father of such fact as a result of which the latter had ordered the man in question to remain away from the home of the prosecutrices in question. In rebuttal, the prosecution produced the aforesaid man as a witness and, over the objection of defendant, he was permitted to testify that neither the father of the named prosecutrix nor anyone else ever ordered him away from the home of such prosecutrix or asked him to "stay away from his place." Over defendant's further objection, this witness was permitted to testify that at no time had he "fondled, felt or caressed the private parts of ———" (the prosecutrix named), and that he had "never at any time spoken to her or anything of that kind. That is one of the things in which I have been above reproach." Whether or not this rebuttal witness had ever been guilty of the misconduct charged against him by one of the prosecutrices in her conversation with the defendant was not in question. In his testimony the latter did not charge the witness with being

guilty of any misconduct. He testified only that the named prosecutrix had made such accusations in her conversation with him and that such information had been relayed to her father. The rebuttal testimony was, therefore, not competent or material. It did not tend to contradict the testimony of the defendant, who did not say that the rebuttal witness had committed any acts upon the person of the girl. He only testified as to what the latter said and the above-mentioned rebuttal testimony did not tend to dispute that fact (*People* v. *Mitchell*, 94 Cal. 550, 554 [28 P. 1106]).

▮ Finally, appellant contends that the evidence is insufficient to support the verdict. Notwithstanding the inconsistencies apparent in some of the testimony given by the prosecutrices, the vagueness of their memory in some respects, and their failure to make complaint of the defendant's alleged conduct for several months, it cannot be said that the testimony of the children in regard to the immediate circumstances surrounding the assaults allegedly made upon them was of such a character that it would appear therefrom that something had been done that it would not seem possible could be done under the circumstances described. While defendant's claims advanced here offered opportunity for a persuasive argument to the jury, we find in them nothing that would justify a reviewing court in concluding that such testimony is *per se* unbelievable and therefore inherently improbable (*People* v. *Roberts*, 50 Cal.App.2d 558, 564 [123 P.2d 628]; *People* v. *Harkness*, 51 Cal.App.2d 133, 140 [124 P.2d 85]).

▮ We must now inquire into the effect of the errors of the trial court upon the disposition of this appeal, in the light of the provisions of section 4½, article VI of our state Constitution. When applying the provisions of the constitutional section just cited to a cause in its entirety, we must direct a reversal when we are unable to say "whether appellant would or would not have been convicted but for the errors of the court" (*People* v. *Degnen*, 70 Cal.App. 567 [234 P. 129]). In *People* v. *Davis*, 210 Cal. 540, 556 [293 P. 32], we find the following language:

"Section 4½ of article VI of the Constitution was not intended to mean that the mere fact that the evidence may legally be able to stand up under the weight of the judgment is sufficient reason in all cases for refusing to set aside the judgment. The phrase 'miscarriage of justice,' used as descriptive of that condition of a cause which justifies the reversal of a

judgment, has no hard and fast definition. It seems assured, however, that where errors have been committed, and where the appellate court finds that upon the record it is seriously doubtful that without such errors the defendant would have been convicted, then it may well be that errors which otherwise would not be considered to be seriously prejudicial will require a reversal. See *People* v. *Adams,* 76 Cal.App. 178, 186 [244 P. 106], and numerous cases there cited.''

In the instant case the evidence is in sharp conflict. All of the material facts testified to by the prosecution were denied and controverted and the defendant presented an imposing array of witnesses who testified to his good reputation concerning the traits involved in the offenses charged against him. There is no corroboration of the testimony of the respective prosecutrices as to the commission by the defendant of the specific acts charged in the information or of the ''other acts,'' and the only act concerning which they in any degree corroborated each other was the act charged in count II, upon which the jury was unable to reach a verdict and which was thereupon dismissed by the court ''in the interest of justice.'' The doctor from Juvenile Hall, who was supposed to give corroborating testimony, on the contrary testified that there was a possibility that the condition she found as to both girls was a normal one.

As to the specific acts charged in the information, we are not unmindful of the rule of law hereinbefore referred to that corroboration of the testimony of the prosecutrix in a case such as the instant one is not required to sustain a conviction; but in considering the application of section 4½ of article VI, we make mention of the total lack of any corroboration, because the recollection and memory of the prosecutrices was admittedly vague in connection with several important circumstances of the case. There is also present the fact that neither prosecutrix made any complaint for some eight or nine months after the claimed outrages to her person occurred. In *People* v. *Adams,* 14 Cal.2d 154, 163 [93 P.2d 146], we are reminded by the Supreme Court of the language employed by that court as far back as *People* v. *Benson* (1856), 6 Cal. 221, 223 [65 Am.Dec. 506], reading as follows:

''There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free

play of malice and private vengeance. In such cases the accused is almost defenseless, and courts, in view of the facility with which charges of this character may be invented and maintained, have been strict in laying down the rule which should govern the jury in their finding.''

 As was said by this court in *People* v. *Duvernay*, 43 Cal.App.2d 823, 829 [111 P.2d 659] :

''There is creditable authority for the statement that the phrase 'miscarriage of justice', as used in the constitutional provision, 'does not merely mean that a guilty man has escaped or that an innocent man has been convicted. It is equally applicable to cases where the acquittal or conviction has resulted from some form of trial in which the essential rights of the people or of the defendant were disregarded or denied. The right of the accused, in a given case, to a fair trial, conducted substantially according to law, is at the same time the right of all inhabitants of the country to protection against procedure which might at some time deprive them of their life or liberty. ''It is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure in which the substantial rights belonging to the defendant shall be respected.'' ' (*People* v. *Wilson*, 23 Cal.App. 513 [138 P. 971].) In the instant case we do not regard the evidence as sufficient to put into operation the provisions of section 4½ of article VI of the Constitution, because even convincing proof of a defendant's guilt does not necessarily mean, under all circumstances, that there has been no miscarriage of justice. (*People* v. *Mahoney*, 201 Cal. 618 [258 P. 607] ; *People* v. *Patubo*, 9 Cal.2d 537 [71 P. 2d 270, 113 A.L.R. 1303].) When a defendant is denied that fair and impartial trial guaranteed by law, such procedure amounts to a denial of due process of law. (*Powell* v. *Alabama*, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527].)''

 Courts are obligated to insist that a defendant be fairly convicted. To relax this rule would be to provide ways and means for the conviction of the innocent. From a reading of the record in the case now before us, we are persuaded that the errors mentioned herein may well have turned the scale in favor of the prosecution; and we cannot say that, in the absence of such errors, a reasonable jury properly instructed would not have rendered a different verdict.

No judgment having been pronounced, the attempted ap-

peal therefrom is dismissed. For the foregoing reasons, the order denying the defendant's motion for a new trial is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.