[Crim. No. 2262.    First Dist., Div. One.    Dec. 21, 1943.]

THE PEOPLE, Respondent, v. PAUL MEYERS, Appellant.

Joseph J. Bullock for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

KNIGHT, J.—The defendant was found guilty by a jury of an attempted rape committed upon a girl seventeen years of age, and was sentenced to imprisonment in the county jail for a term of six months. He was charged also, in the same information, with the crime of kidnaping, but was acquitted thereof. He prosecutes the present appeal from the conviction of attempted rape, and pending its determination was released on bail. The two points urged in support of the appeal are directed against the sufficiency of the evidence and the form of a cautionary instruction. There is no merit in either point.

The prosecutrix was a high school student, and lived in Millbrae with her father, two brothers and a sister. Her mother was dead. The defendant was residing temporarily in San Mateo. He was thirty-one years old, and followed horse racing for a living. At this particular time he had a horse entered in the race meet then being held at the Bay Meadows Race Track. He was married, but his wife was living in Los Angeles; and during the racing season at Bay Meadows he was lodging with a jockey at a house in San Mateo. He met the girl the night preceding the commission of the offense, at the conclusion of a dance which the girl had attended in San Mateo, in company with her brother and a girl friend, and the defendant made an appointment with the prosecutrix to call for her the next evening and escort her to a neighborhood "movie." He arrived at her home at the appointed time in his automobile, and they drove first to a dining place operated by a drug store in Burlingame for dinner, and then went to a Burlingame theatre. They left the theatre between 9:30 and 10 o'clock, and proceeded to drive back to the girl's home, located on Ludeman Lane, a narrow road running from El Camino Real westerly up to and beyond the Millbrae Country Club golf links. But instead of stopping at her home, the defendant drove on for about a quarter of a mile and stopped in the parking area of the golf links. The girl testified that while they were parked there the defendant, by means of force, attempted to have an act of sexual intercourse

with her, following which he forcibly prevented her from leaving the car and started to drive back down Ludeman Lane toward her home, but refused to let her out there, and drove on, telling her he was going to take her to a police station. As they drove through Millbrae the girl screamed for help. Three persons heard her screams. Two of them were standing on the street and they testified that the defendant was driving through the town at a speed of 40 to 55 miles an hour. One of them was the chief of police, with whom the girl was acquainted, and hearing the girl's screams he got into his car and chased the defendant's car down the highway toward Burlingame for a distance of more than half a mile, at a speed of 55 or 60 miles an hour, before he overtook and stopped him. The girl jumped out and the officer asked her what had happened. She replied that the defendant had attacked her. He then said to the defendant, "What seems to be the trouble," and the defendant replied: "Ask the girl." The girl then repeated that the defendant had attacked her, and in response to further inquiry by the officer as to whether she would be willing to file a complaint against the defendant, she said she would. Thereupon the officer drove them to the sheriff's office in San Mateo, and after delivering the defendant into the custody of a deputy sheriff took the girl to a doctor for a physical examination. The officer further testified that when he stopped the defendant's car, the defendant and the girl "both looked like they had been in an awful fight"; that their hair "was all mussed up"; and that the girl was nervous and excited.

The defendant, testifying in his own behalf, admitted that he refused to let the girl get out of the automobile at her home after they left the golf links and that he told her he was taking her to a police station; but he denied having molested the girl in any manner, at any time, and specifically denied having attempted to commit an act of sexual intercourse with her. The record shows, however, in contradiction of his denial, that on the morning following his arrest he stated to the assistant district attorney, in the presence of the chief of police and a deputy sheriff, that he "was on top of the girl" and did attempt to have an act of sexual intercourse with her. Furthermore the medical testimony introduced corroborates the girl's testimony that such an act was attempted.

The explanation offered by the defendant to the jury for

having refused to let the girl out of the automobile at her home was in substance as follows: "I drove up to the golf course and parked. I must have been parked there about 10 minutes, and we were talking, she asked me about my business, what kind of business I was in, and I told her I was in the race horse business and my horse had just got through winning, and there was a kind of a lull in the conversation and she said 'You know I can get anything I want out of you.' It shocked me so I was kind of surprised, and I said, 'What do you mean?' And she said, 'All I have to do is holler "rape, rape." I am only 17 and they will put you in jail.' . . . I just was surprised. It stunned me so I just sat there for a minute, and then started up my car . . . I started back down the highway and when we got to her home she said, 'Here's where I live.' I said, 'I know it.' She said, 'What are you going to do?' I said, 'I am going to take you down to the police station.' She begged me not to." Continuing, he testified that she asked him why he was doing so and he told her he was going to protect himself, that she had told him she was going to get him in trouble and he wanted to make sure she would not; "In other words," so he stated, he was "going to file a complaint against her," and that he was on his way to the San Mateo police station when he was stopped by the chief of police in Millbrae. However, the girl positively denied ever having had any such conversation with the defendant at the golf links or elsewhere. The defendant also disputed the testimony given by the chief of police and the girl as to what was said when the officer stopped the automobile in Millbrae; and he denied having made the incriminating statements on the morning following his arrest. But the contradictory testimony given by him in this respect merely raised a conflict with that given by the prosecutions's witnesses; consequently it was for the jury to decide who was telling the truth.

█ Defendant argues that the testimony given by the girl as to what took place while they were in the parked car on the golf links is inherently improbable; but in this connection it should be noted that the girl was under the age of eighteen years, and that therefore the real question in the case was whether an act of sexual intercourse was attempted, rather than the extent of force that was used in attempting to commit the act; and in view of the medical testimony and

the incriminating statement made by the defendant on the morning following his arrest, it cannot be held, on appeal, as a matter of law, that the girl's testimony that such attempt was made, is inherently improbable. The rule governing reviewing courts in dealing with such a question is stated in *People* v. *Holquin,* 48 Cal.App.2d 551 [120 P.2d 71], as follows: "It cannot be said that the testimony of a prosecutrix is inherently improbable merely because it contains contradictions or inconsistencies. To justify a reversal because of the incredibility of the testimony, its improbability must be so obvious as to leave the court no recourse, without self-stultification, except to reverse the judgment. (*People* v. *Becker,* 140 Cal.App. 162 [35 P.2d 196]; *People* v. *Amadio,* 25 Cal. App. 729 [145 P. 151].)

"It is not sufficient that the testimony contain unusual circumstances. (*People* v. *Collier,* 111 Cal.App. 215, 226 [295 P. 898].) It is the peculiar and exclusive province of the jury to determine whether a witness has sworn falsely. Although the testimony of the prosecutrix contains contradictions and although her testimony be contradicted by other witnesses, it is still the duty of the jury to determine whether they will believe or disbelieve the prosecutrix. (*People* v. *Becker, supra.*)

"But, even though the testimony of the prosecutrix contains glaring inconsistencies and contradictions, the appellate court must accredit to the decision of the trial judge a familiarity with the witnesses and their testimony and assume that in denying a new trial he acted with understanding and with a regard for the function of the jury. Those instances in which the appellate courts have overridden the conclusions of the jury and the trial courts are where the testimony of the complaining witness is uncorroborated and it is so obviously and so inherently false and unbelievable that reasonable minds may not differ with respect to its character. (*People* v. *Jefferson,* 31 Cal.App.2d 562, 566 [88 P.2d 238].)"

In other words, as said in *People* v. *Huston,* 21 Cal.2d 690 [134 P.2d 758], ". . . testimony which merely discloses unusual circumstances does not come within that category. (*Kidroski* v. *Anderson,* 39 Cal.App.2d 602, 605 [103 P.2d 1000].) To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true,

or their falsity must be apparent without resorting to inferences or deductions. (*Back* v. *Farnsworth,* 25 Cal.App.2d 212, 219 [77 P.2d 295]; *Lufkin* v. *Patten-Blinn Lumber Co.,* 15 Cal.App.2d 259, 262 [59 P.2d 414]; *Agoure* v. *Spinks Realty Co.,* 5 Cal.App.2d 444, 451 [42 P.2d 660]; *Hughes* v. *Quackenbush,* 1 Cal.App.2d 349, 354, 355 [37 P.2d 99]; *Powell* v. *Powell,* 40 Cal.App. 155, 158, 159 [180 P. 346].) Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (*Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 781 [117 P.2d 850].)''

Applying the foregoing legal doctrines to the state of the evidence here presented, it is apparent that there could be no justification for holding as a matter of law, contrary to the finding of the jury and the conclusion reached by the trial court in passing on the motion for new trial, that the testimony of the prosecutrix is inherently improbable. The very most that can be said is that the evidence is conflicting; and that being so, the conclusions drawn therefrom by the jury and the trial judge are controlling on appeal.

■ With respect to defendant's second point, it is doubtless the law that in sex cases the defendant should be afforded the benefit of a cautionary instruction. (*People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367]; *People* v. *Lucas,* 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485].) But in dealing with such cases on appeal it has been held repeatedly that it is not necessarily prejudicial error for the court to refuse a cautionary instruction where the testimony of the prosecutrix is corroborated by direct or circumstantial evidence and the jury is instructed that the defendant is presumed to be innocent and that his guilt must be established beyond a reasonable doubt. (*People* v. *Mummert,* 57 Cal.App.2d 849 [135 P.2d 665], citing *People* v. *Agullana,* 4 Cal.App.2d 34 [40 P.2d 848]; *People* v. *Williams,* 55 Cal.App.2d 696 [131 P.2d 851]. See, also, *People* v. *Fleming,* 58 Cal.App.2d 37 [136 P.2d 88].) Here the testimony of the prosecutrix was corroborated, and the jury was fully instructed upon the two doctrines last mentioned. Nevertheless the trial court gave the defendant the benefit of a cautionary instruction. It was as follows: ''I instruct you that while it is true that the law does not

require in this character of cases that the prosecuting witness be necessarily supported by another witness, or corroborating circumstances, still I charge you that the law does require in this class of cases that you examine her testimony with caution.'' While the instruction so given did not embody all of the argumentative language used in some of the decisions in stating the reason why in sex cases a cautionary instruction should be given, it will be noted that thereby the jury was definitely and clearly instructed that in this class of cases the testimony of the prosecutrix should be examined with caution; which in view of the corroborative testimony here adduced, was legally sufficient to meet the legal requirement.

The two cautionary instructions proposed by defendant were properly refused. The purport of both was that the testimony of the prosecutrix was wholly uncorrborated. It is apparent, therefore, that since the members of the jury are the sole judges of the weight to be given to the evidence and of the credibility of the witnesses, the giving of the instructions in the form proposed would have constituted an invasion of rights and powers to be exercised by the jury.

The judgment of conviction and the order denying the motion for new trial are and each of them is affirmed. The appeal taken by defendant from the order denying his motion for an arrest of judgment is dismissed, since no appeal lies from such an order.

Peters, P. J., and Ward, J., concurred.