[Crim. No. 1998. Third Dist. Feb. 9, 1948.]

THE PEOPLE, Plaintiff and Appellant, v. MAURICE M. O'MOORE, Defendant and Appellant.

Fred N. Howser, Attorney General, and Ruth Bernfeld, Deputy Attorney General, for Plaintiff and Appellant.

J. Oscar Goldstein, P. M. Barceloux and Burton J. Goldstein for Defendant and Appellant.

THOMPSON, J.—An indictment was filed in Butte County, March 15, 1946, against the defendant, charging him in three counts with contributing to the delinquency of named minors, under section 702 of the Welfare and Institutions Code. It also contained two other counts charging him, under the provisions of section 288a of the Penal Code, with felonies committed on the same minors. March 29th of the same year the grand jury also indicted the defendant on two counts, one of which charged him with contributing to the delinquency of another named minor, and the first count also charged him with a felony against the same minor, contrary to section 286 of the Penal Code.

The cases were consolidated for trial. On July 16, 1946, before trial, the defendant moved to dismiss the counts in both indictments charging him with contributing to the delinquency of minors, on the ground that each such count failed to state facts sufficient to constitute a cause of action. At the same time the district attorney moved to amend said counts of the indictments, pursuant to section 1008 of the Penal Code, to more specifically describe the immoral acts charged to have been performed. The court granted the motion to amend said counts, which amendments were filed as hereinafter stated. Thereupon, defendant's motion to dismiss the counts was denied.

Upon conclusion of the evidence at the trial, the court advised the jury to acquit the defendant of the felony charges under sections 286 and 288a of the Penal Code, for the lack of corroborating evidence of the offenses, but the jury found

the defendant guilty on each count of both indictments. A motion for new trial was granted as to the last-mentioned three charges of felonies, and denied as to the remaining counts of contributing to the delinquency of minors. The defendant was thereupon sentenced to imprisonment in the county jail in Butte County, on conviction of the misdemeanor offenses charged in counts 1, 4 and 5 of the first indictment, for the term of one year for each count, said sentences to run concurrently. And the defendant was sentenced on conviction of count 2 of the second indictment to one year of imprisonment in the same jail, to commence at the expiration of the first mentioned sentence.

From the judgments of conviction of contributing to the delinquency of minors, and from the order denying his motion for new trial the defendant has appealed. From the order granting a new trial on the felony charges the State of California has appealed. Both appeals are presented on the same record.

We shall first consider defendant's appeal. He contends that the judgments of conviction of contributing to the delinquency of minors are not supported by the evidence; that the court erred in permitting amendments to the indictments for the reason that the original counts failed to state public offenses, and that the causes were not resubmitted to the grand jury; that the district attorney was guilty of prejudicial misconduct, and that the court also erred in the instructions which were given to the jury.

We are of the opinion the court did not err in allowing amendments to the indictments with respect to the charges of contributing to the delinquency of minors without resubmitting them to the grand jury. In said counts the indictments charged the defendant, in the language of the statute, with violating section 702 of the Welfare and Institutions Code by *"committing acts"* upon named minors of stated ages from 15 to 18 years of age, upon specified dates, which caused or tended to cause the minors to become delinquent and to bring them within subdivision (k) of section 700 of said code. The amendments which were allowed by the court, before trial, on July 16th, under section 1008 of the Penal Code, merely specified the alleged acts with more particularity, by adding to each count the following language:

"That at the time and place aforesaid, Maurice M. O'Moore did fondle, caress, and otherwise commit lewd and lascivious acts upon the body and person of the said ———— ————."

The defendant, on April 8th, was arraigned and pleaded not guilty. Demurrers to the indictments were not filed. Defendant's motion to dismiss the indictments for failure to state public offenses was not made until July 16th, at which time the motion to amend was also made. Clearly the amendments do not change the offenses charged in the indictments. Nor do we perceive how such amendments could have prejudiced the substantial rights of the defendant. The defendant was furnished a transcript of the testimony taken before the grand jury, including his own testimony which was voluntarily given, and he knew the nature of the acts relied upon as proof of the offenses charged. No motion to continue the trial on account of the amendments, or otherwise, was made by the defendant. All issues raised by the amended indictments were thoroughly and elaborately tried. The transcript of evidence contains 1,604 pages.

Under the California statute, by leave of court, an indictment may be amended after the plea has been made, and at any stage of the proceedings, without resubmitting the cause to the grand jury, "for *any defect or insufficiency*" thereof, if the amendment does not "change the offense charged," and the "substantial rights of the defendant" are not thereby prejudiced. (Pen. Code, § 1008; *People* v. *Seitz,* 209 Cal. 199, 202 [286 P. 697]; *Chrisman* v. *Superior Court,* 59 Cal.App. 305 [210 P. 632]; *People* v. *Suter,* 43 Cal.App.2d 444, 462 [111 P.2d 23]; *People* v. *Joseph,* 21 Cal.App.2d 336 [69 P.2d 465]; *People* v. *Bellamy,* 79 Cal.App. 160 [248 P. 1042]; *People* v. *Rippe,* 32 Cal.App. 514 [163 P. 506]; 42 C.J.S. p. 1240, § 230 b.) ▮ The amendments authorized by section 1008 of the Penal Code are not confined to mere matters of form, as distinguished from matters of substance. That section authorizes amendments "for *any defect or insufficiency.*" (Italics added.) In the Joseph case, *supra,* the original indictment failed to fix the venue. That omission was certainly a matter of grave importance and of substance rather than of mere form. For an allegation of venue was necessary to give the court jurisdiction of the cause. But, on motion, the indictment was permitted to be amended by alleging that the offense occurred in Fresno County. On appeal, the judgment of conviction was affirmed. The Supreme Court denied a hearing. We conclude that section 1008 was not intended to be limited to mere unimportant matters of form. But regardless of that question, the present amendments were authorized

by the statute, since they merely more particularly stated the nature of the acts relied upon in violation of the said sections of the Welfare and Institutions Code.

In support of his contention that the amendments to the indictments in this case were not authorized by statute, the defendant relies on *Mitchell* v. *Superior Court,* 76 Cal. App. 734 [245 P. 1109]. That case is not authority for so holding under the circumstances of this case. The indictment was not amended in the Mitchell case. The court said, "No amendment of said indictment was sought and no amendment was allowed." That was a petition for a writ of mandamus to compel the court to dismiss a new indictment which was presented after a demurrer to the original indictment was sustained and resubmission of the cause to the grand jury. A motion to dismiss the second indictment was then made. What the court said regarding the amendment of an indictment as to matters of "substance" of the charge is dictum, for the reason that no amendments were made or involved therein. Moreover, all that the court said in that regard is that "an omission to plead *some material element in the alleged offense"* may not be corrected by amendment under section 1008. It said, "no [such] amendment, in the proper use of that expression, can be made, as it will affect the substantial rights of the defendant." That statement is made on the theory that if a *material element of the offense* is omitted, the indictment fails to state a public offense. In the present case a material element of the offenses of contributing to the delinquency of minors was not omitted from the original indictments. That case is therefore not in point.

Likewise, in the case of *People* v. *Giminiani,* 70 Cal.App. 195 [232 P. 993], upon which the appellant relies, the question of an amendment of the information under section 1008 of the Penal Code was not involved. The original information, unlike the one in this case, merely alleged that the defendant did "willfully and unlawfully cause, induce and encourage" the named minor to lead "an idle, dissolute, lewd, and immoral life." There was absolutely no allegation that the defendant committed any act whatever to cause the minor to lead a dissolute life. In the present case the original indictments charged that the defendant did "wilfully and wrongfully *commit acts"* in violation of section 702 of the Welfare and Institutions Code, which caused the minors to come within the provisions of subdivision (k) of section 700 of that code. The amendments which were

allowed in this case merely more particularly described the nature of the previously alleged "acts" which contributed to the delinquency of the minors. There is a clear distinction between this case and the Giminiani case in that respect. In that case no amendments to the information were asked for or allowed. On motion of the defendant, the original action was dismissed because it was not alleged that any acts whatever had been committed. Therefore a new cause was commenced. A preliminary hearing was had, and a new information was filed. On motion of the defendant, the new information was set aside. From that order an appeal was taken. The appellate court reversed that order. All that the court decided was that the dismissal of the first information was not a bar to the second proceeding, because the first information did not pretend to allege that the defendant committed *any act* which contributed to the delinquency of the minor, and that it therefore was not a bar to the second proceeding. The order dismissing the second information was therefore reversed. The court said:

"The fault in the information in the first action against defendant was that it charged that the defendant did 'willfully and unlawfully cause, induce and encourage' the described person to lead and to be in danger of leading an idle, dissolute, lewd, and immoral life. But *that information did not charge the commission of any act or the omission of the performance of any duty, whereby the described result was caused.* Therefore that information did not state any criminal offense." (Italics added.)

The indictments in this case did allege that the defendant "committed acts" which led the minors to become delinquents. By the amendments allowed in this case, those alleged acts were described. That distinction between the two cases renders the Giminiani decision inapplicable to the situation in this case.

We are satisfied the amendments to the indictments in the present case did not *change the offenses* originally charged. They merely more particularly specified the means by which the alleged offenses were accomplished. In *People* v. *Hinshaw,* 194 Cal. 1, the court said at page 13 [227 P. 156], that "the distinction must be observed between charging a different offense *and charging the offense differently.*" (Italics added.) In that case the defendant was charged, under section 245 of the Penal Code, with an assault which "was

likely to and did produce great bodily harm.'' The amended information, complained of, alleged that ''the assault was made with the fists and hands upon the head and face and that the result was a fractured jaw and other grievous injuries.'' On appeal, it was held that change in the original pleading did not result in *a change of the offense charged* under section 245 of an assault by means of force likely to produce great bodily injury. The judgment of conviction was affirmed.

Numerous California cases hold that similar amendments and additions to informations or indictments, made pursuant to section 1008 of the Penal Code, do not result in changing the offenses charged, or in prejudicing the rights of defendants. Liberality appears to have been countenanced in allowing such amendments under statutory provisions therefor, to simplify procedure, to further the ends of justice, and to ''save indictments against defects and deficiencies *of substance and form* by amendment stating the offense intended to be charged.'' (42 C.J.S., § 230b, p. 1240.) In upholding a similar amendment of an information, the court said in *People* v. *Miller,* 34 Cal.App. 641 [168 P. 574]:

''It is only necessary to say in this case that the original information *purported to charge a public offense,* and that the amended information as filed, after the request of the district attorney and upon the permission of the court being given, *did not charge an offense different from that attempted to be stated in the original information. Consequently the filing of the amended complaint neither prejudiced the defendant nor contravened the provisions of section 1008 of the Penal Code.* (See *People* v. *Rippe,* 32 Cal.App. 514 [163 P. 506].)'' (Italics added.)

We conclude that the amendments to the indictments which were allowed and made in this case were neither in contravention of the provisions of section 1008 of the Penal Code, nor prejudicial to the substantial rights of the defendant.

We are of the opinion the evidence sustains the verdicts and judgment of conviction of the defendant for contributing to the delinquency of the three named minors. The circumstances of the case are unusual. The accused was ably defended by experienced attorneys. The case was tried with a jury before an able judge of recognized ability and many years of experience. The trial lasted three weeks. The transcript contains over 1,600 pages of evidence. The three boys, who are implicated in the charges of which the defend-

ant was convicted, testified to a course of conduct indicating moral depravity on the part of appellant. They testified to repeated offenses extending over a period of several months, including sodomy and cunnilingus. The evidence is revolting. There is corroborating evidence of circumstances which appears to be difficult to reconcile on any theory other than that of the guilt of the defendant. The defendant, however, strenuously insists that he was the victim of a conspiracy of these bad boys to falsely swear to incriminating acts on his part to procure his conviction so as to save them from reform school. That defense was rejected by the jury, and by the trial judge in denying a motion for new trial on said counts of contributing to the delinquency of minors. There are certain conflicts in the evidence of the boys given before the grand jury and at the trial, which, on account of the complication involving numerous alleged offenses extending over a period of several months, may be reasonably reconciled. We assume the jury so reconciled those conflicts to their entire satisfaction.

The defendant is apparently an unmarried man of mature age. He was ordained as a minister at Napa, and immediately became the rector of a small church at Chico, where he arrived in January, 1943. There is no evidence concerning his occupation or life prior to that time, except that it appears he was known in San Francisco. Evidence as to his former residence, occupation and manner of life was excluded upon objection of the defendant that it was incompetent and irrelevant. However, two police officers testified they knew him at San Francisco for 18 years and that his general reputation for truth, honesty and integrity was bad. Upon his arrival at Chico he occupied and lived in two adjoining rooms in an annex to the church building. One room was furnished with a couch used as a bed, together with chairs and modest equipment. The other room was fully furnished with a double bed, bureau, desk, chairs, stove for cooking meals, utensils, table and other equipment. It was used by the defendant as his office, study, bedroom, dining room and kitchen. He lived in those rooms for about two years. He took particular interest in boys, and organized a church guild having a membership of from 20 to 40 boys. In the spring of 1943, he became acquainted with the three boys who are the chief prosecuting witnesses in this case. Two of them were 15 years of age. The other was 18 years

old. Prior to that time the boys were strangers to each other. He knew each was a ward of the juvenile court for having committed offenses of larceny of small tools, pigeons, or rabbits. One of them stole an automobile and drove to Washington. The defendant invited them to his room and encouraged their friendship. They slept with him in his room. They became members of his guild. One of them officiated as its president. Two of them joined the church and became altar boys therein. One of them sang in the choir. The probation department finally transferred the custody of two of the boys from their relatives to that of the defendant. He took two of the boys to live with him in his rooms. They alternately slept with him in his double bed, while the other occupied the couch in the adjoining room. He proposed to formally adopt those two boys, but failed to do so. He constantly associated with them, and made frequent journeys with one of the boys at a time in his automobile to other cities, including several trips to Sacramento, Marysville, Oroville and other places, where they sometimes attended moving picture plays and remained overnight in obscure rooming houses or hotels. There is evidence that he thus visited with one of the boys at Marysville four times, at Sacramento three times, and at least once in each of the cities of Oroville, Red Bluff and San Francisco. At Sacramento they remained overnight at a rooming house in the lower part of the city, which was frequented by Negroes. A Negress showed them to their room. The defendant registered at Marysville and at some other rooming houses or hotels under a false name as "Jack Williams and Son." He admitted that fact. Regarding that false registration, this colloquy occurred:

"Q. How did you register? A. I didn't give my own name. Q. You what? A. I didn't give my own name. Q. Why not? A. I don't know. . . . I looked upon him as my son. Q. Why did you do this? A. Why did I sign it? Q. Yes. A. I really couldn't give you an explanation, I realize it was a mistake."

The explanation that he registered in that manner because he intended to adopt the boy, and looked upon him as his son, might account for adding to his registration the word "Son." But that would not account for falsely signing the fictitious name of "Jack Williams." Nor would it account for registering in obscure rooming houses or hotels.

To rebut defendant's denial that he was ever in the Sullivan Hotel or that he stayed with one of the boys at Oroville

on a specified night, Henry Kloss, a bartender who lived at the Sullivan Hotel, testified that he saw and recognized the defendant at his place of business about that date, and that he then consumed six or seven drinks of "whiskey or brandy."

In February, 1946, two of the boys stole an automobile and drove to Los Angeles, where they were arrested, and for the first time told the officers of that city of defendant's immoral relations with them. That fact was communicated to the Butte County officers. The defendant was told of their arrest. He immediately interviewed the sheriff and probation officers of Butte County, asking for leave to go to Los Angeles to return the boys, and when that was refused, he urged the probation officers not to permit anyone to talk with the boys until he had first seen them. Mrs. Bernice Hamilton, deputy probation officer, testified that the defendant called their office about that matter four or five times, and that "He asked me that when the boys were picked up for me not to talk to them but to get in touch with him immediately and he would do the talking." Having learned of the boys' accusations against the defendant, his request was refused. When the boys were returned an investigation by the grand jury followed, and the defendant was indicted, as we have previously stated.

There was much evidence favorable to the defendant. We have not attempted to recite that evidence, but merely to outline such as tends to support the judgment. The characters of the boys who are implicated in a succession of alleged offenses are not exemplary. Upon a careful reading of their testimony we are impressed with the truthfulness of the main essential features of their stories, but we do not assume the right to pass upon the credibility of the witnesses or the weight of their evidence. That was the province of the jury and of the trial judge. As a whole, their evidence appears to be consistent.

We concede there are some discrepancies in the evidence. One of the chief conflicts of evidence of one of the boys, relied upon by the appellant, is a discrepancy between a statement made before the grand jury and his evidence at the trial with respect to how he was clothed on the first occasion when he charged the defendant with immoral acts committed in the bed. He told the grand jury that he went to bed clothed in a shirt and underwear, and that the defendant not only committed lewd and lascivious acts upon him, but also that he at-

tempted to commit sodomy, but did not accomplish that purpose. At the trial he testified that he then had no clothing on at all. He told the trial jury that he had on no pajamas or clothing of any sort that night when he went to bed. On cross-examination, he admitted that what he told the grand jury in that respect was not true. He said he had changed his mind in that regard, and that his present recollection was different. When he was asked why he told the grand jury he then had on "a shirt and underwear," he replied, "I made a mistake, I didn't have nothing on." We assume that if that were the only occasion of an alleged immoral act, or the only time when he had slept in bed with the defendant, his recollection of the manner in which he was then clothed, or whether he was clothed at all, would be very important. But in a series of alleged immoral acts covering a period of several months, that discrepancy might be reasonably explained. The witness said that the defendant did not succeed in committing sodomy. It is evident, regardless of whether or not the boy then wore underclothes, that the defendant could nevertheless have been guilty of acts tending to contribute to the delinquency of a minor, of which he was convicted. We assume the jury reconciled that conflicting statement to its entire satisfaction. With that conclusion we may not interfere. There are some other conflicting statements upon which the appellant relies, but we think they are not of sufficient importance to justify a discussion of them. They all appear to go to the credibility of the witnesses, or to the weight of their testimony. We are persuaded the evidence supports the verdicts and judgments of conviction of the offenses of contributing to the delinquency of minors.

The appellant insists that the testimony of the boys who were implicated in the offenses of which he was convicted is inherently improbable. We think not.

A judgment of conviction will not be reversed on the ground that the testimony of the prosecuting witness is inherently improbable, even though it may contain "glaring inconsistencies and contradictions," unless it is so clearly false and unbelievable that reasonable minds may not differ in that regard, or that the facts asserted are physically impossible. It is the sole province of the jury or the trial judge to determine the credibility of witnesses and the weight to be given to their evidence. The judgment of a reviewing court should not be substituted for that of the jury or trial judge when there is any credible evidence to support the ver-

dict or judgment, unless it is apparent that the verdict is the result of passion or prejudice. (*People* v. *Meyers,* 62 Cal. App.2d 24 [144 P.2d 60]; *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Carlson,* 73 Cal.App.2d 933, 939 [167 P.2d 812]; *People* v. *Jefferson,* 31 Cal.App.2d 562 [88 P.2d 238]; *People* v. *Battilana,* 52 Cal.App.2d 685 [126 P.2d 923]; *People* v. *Becker,* 140 Cal.App. 162 [35 P.2d 196]; 8 Cal.Jur. § 582, p. 590.)

In the present case the facts testified to by the prosecuting witnesses are not physically impossible. There are contradictory statements of the witnesses which, we think, may be reasonably reconciled. It was the duty of the jury to so reconcile them. The chief contention of the appellant is that the contradictory statements require this court to conclude that the entire evidence of those witnesses is false and unbelievable. We think not. Under the circumstances of this case the challenged evidence merely presents a question of credibility of witnesses and the weight to be given to their testimony. Those are questions for the jury, with whose conclusions we may not interfere. The record contains some corroborating evidence by other witnesses, including the conduct and admissions of the defendant. The evidence is not inherently improbable.

The cases of *People* v. *Trumbo,* 60 Cal.App.2d 681 [141 P.2d 225], *People* v. *Casillas,* 60 Cal.App.2d 785 [141 P.2d 768], and *People* v. *Watrous,* 7 Cal.App.2d 7 [45 P.2d 380], upon which appellant O'Moore relies, are not in conflict with the foregoing uniform rule. The judgment in the Trumbo case was reversed for failure to give to the jury a cautionary instruction, which, in view of very unsatisfactory evidence, should have been given. The court said: "Upon the record of the case . . . there can be no doubt but that an adequate cautionary instruction was vital to a proper consideration of the evidence." The support of the judgment depended almost entirely on the testimony of the 7-year-old prosecutrix. Her evidence indicated that she lacked understanding sufficient to give her testimony full credence. In the present case a cautionary instruction was given to the jury. In the Casillas case the defendant was convicted of rape of his 15-year-old daughter, who was pregnant. The court said that the child reluctantly testified "after being threatened with imprisonment for contempt" that the father committed rape upon her. On cross-examination, she denied that her father ever

had sexual intercourse with her and explained that she had said her father was guilty because she was trying to protect a boy friend with whom she had had sexual relations, and that she thought her accusation of her father would not result in any trouble for him. On motion for new trial the judge said "the testimony . . . was entirely uncertain." The girl was the sole witness for the prosecution, except that her mother testified to her daughter's age only. That was a flagrant case of unreliable and unconvincing evidence. The judgment was reversed. In the Watrous case, a judgment of conviction of the defendant of contributing to the delinquency of two 4-year-old children was reversed. The children were permitted to testify over the objection that they lacked understanding to qualify them. Their extreme infancy is persuasive of their lack of understanding. No other evidence of guilt was adduced, except the testimony of their grandmother who merely related hearsay statements of the children. Their mother was not told of the alleged offenses. The court said:

"When it is recalled that the only evidence tending to connect the defendant with the crime—which he at all times denied—was the testimony of the two four year old children and the testimony of the grandmother, who could only testify as to what she was told, it is obvious that the capacity of the children as witnesses is vital."

We think the judgments in the preceding cases were properly reversed. The facts of those cases were in no wise comparable to those of the present case in which there is persuasive evidence of the three victims, who were intelligent boys 15 to 18 years of age, and also other corroborating circumstances, in support of the judgments.

■ There is no merit in appellant's charge that the district attorney was guilty of prejudicial misconduct in his cross-examination of the defendant. The defendant had testified that he was ordained as a minister at Napa in 1943, and that he took charge of the Chico church that same year. There are 167 pages of his examination in chief. On cross-examination he was asked where he had lived prior to the time he went to Chico, whether he had not previously lived at Napa and formerly at a designated address on Taylor Street in San Francisco, and what business he was engaged in before he became a minister. To each of those questions defendant's objections were sustained. Upon further cross-examination as to his alleged immoral conduct toward the prosecuting witnesses, all of which he strenuously denied, the district

attorney asked him: "Father O'Moore, you know what homosexuality is?" to which he replied "Yes." He was then asked "Isn't it true you are a homo-sexual?" An objection to the last question was promptly sustained, and the jury was directed to disregard it. The court said, "I will sustain it, the question is improper and the jury is directed to disregard it entirely." After the ruling of the court, defendant's attorney said, "In view of the witness having been asked that, I will request him to answer the question," to which the defendant replied, "Before God and man, no." In view of the definite instruction to the jury to disregard that challenged question, we conclude that it was not prejudicial or reversible error.

██ Nor does the district attorney's reference in his argument to the jury to the many immoral acts of the defendant, testified to by the prosecuting witnesses, as an indication that they were "the true trait of homosexuality," constitute prejudicial or reversible error. If the numerous abhorrent acts related in the evidence were performed, as the district attorney and the jury evidently believed they were, they strongly indicate that a person guilty of such conduct would be a moral pervert who might appropriately be characterized as possessing "traits of homosexuality." Moreover that statement was not assigned as prejudicial or erroneous, and the court was not asked to strike it from the record or to instruct the jury to disregard it. It has been frequently held that such alleged prejudicial misconduct is not reversible error when the defendant fails to object thereto, or to request the court to strike it out and to admonish the jury to disregard the same. (*People* v. *Routh*, 182 Cal. 561, 567 [189 P. 436]; 8 Cal.Jur. § 521, p. 508.) Any possible prejudicial effect of the statement of counsel was waived by failure to assign it as error and to ask the court to instruct the jury to disregard it. (*People* v. *Hunter*, 49 Cal.App.2d 243, 250 [121 P.2d 529].)

██ Finally, the appellant O'Moore contends that the court erred in giving to the jury one instruction with relation to the purpose for which evidence of prior or subsequent immoral acts of the defendant upon the minors who are involved in the charges of contributing to their delinquency, other than the specific ones included in the indictments, may be considered by the jury. It is asserted the challenged instruction erroneously told the jury that such other offenses could be considered "as corroboration" of the specific offenses charged,

regardless of whether the prior or subsequent acts were committed upon the witness so testifying or upon other victims not named in the indictments. In support of that claim the appellant cites and relies upon *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], *People* v. *Asavis,* 22 Cal.App.2d 492 [71 P. 2d 307], *People* v. *Huston,* 45 Cal.App.2d 596 [114 P.2d 607], and *People* v. *Smittcamp,* 70 Cal.App.2d 741 [161 P.2d 983].)

We are of the opinion the instruction complained of is not subject to that criticism, and that it is therefore not prejudicial. It appears to be a correct statement of the law under the circumstances of this case. The giving of that instruction is not reversible error. The jury was very fully and fairly instructed upon all essential issues, and we think the jury could not have been misled by that instruction. The cases relied upon by appellant are readily distinguishable from the facts of the present case.

█ In this case four separate charges of contributing to the delinquency of three different named minors were tried at the same time. The immoral acts were frequently repeated over a period of several months. The conduct of the defendant was a succession of immoral acts perpetrated pursuant to a uniform plan, all of which, combined, tended to "cause or encourage" the minors to "come within the provisions" of section 700 of the Welfare and Institutions Code, and to become delinquent. As stated in the text of 8 California Jurisprudence, section 168, page 62, supported by California authorities, "[I]n the case of the crime of contributing to the dependency of a minor, one might succeed in leading a minor into a course of conduct described as dependent only after *repeated acts of persuasion,* yet all such acts are admissible *as only one crime is committed."* (Italics added.) The evidence of other acts committed in this case was competent and admissible as applying to the particular charge regarding which the witnesses testified. █ If the evidence was not in fact limited to that particular case, the defendant may not complain, since the burden was on him to ask the court to so limit that evidence, and having failed to do so, he waived that objection. (*People* v. *Carmean,* 23 Cal.App. 396, 399 [138 P. 117] ; 8 Cal.Jur. § 363, p. 311.)

█ The instruction complained of reads as follows:

"Testimony has been introduced by the prosecution in this case tending to prove other acts of the defendant with said minors prior and subsequent to the acts charged in the indictments relied upon for conviction. This evidence is

introduced for the purpose of attempting to prove the *disposition and tendency of the defendant to commit the acts charged*. This evidence is not introduced to prove the distinct offense but as corroborative evidence *to support the one specific offense for which the defendant is being tried*. In any event, the defendant can be convicted, if at all, only for the offense with which he is charged and is now on trial.'' (Italics added.)

The jury was elsewhere clearly told that each count was a separate charge and that the defendant must be acquitted of such charge unless the jury was satisfied from the evidence of defendant's guilt thereof beyond a reasonable doubt. Not only was evidence of other immoral acts upon the same boys mentioned in the indictments clearly and properly applied by the charge of the court, but, apparently, on the court's own initiative, the jury was warned that it must ''carefully scan the testimony of the said minors'' and ''view same with caution.'' That instruction reads:

''In the prosecution of the offenses such as those involved in these cases and where it appears as in the cases herein where no persons are present at the times charged as being the times when the offenses were alleged to have been committed, except the minors involved and the defendant, from the nature of the cases the said minors and the defendant are usually the only witnesses to the acts complained of and as *such charges are easily made and difficult to disprove. Therefore, it is the duty of the jury in these cases to carefully scan the testimony of the said minors and to view same with caution.''* (Italics added.)

In the challenged instruction the court carefully distinguished the misdemeanor charges from the felonies by a second paragraph added to each of the instructions previously quoted. We do not perceive how the jury could possibly have been misled by the instruction complained of. It is not the province of a reviewing court to upset the verdict of a jury for erroneous instructions unless they are misleading and prejudicial, which we believe the charge in this case was not.

 It will be observed the court clearly instructed the jury that the evidence of immoral acts with a named minor, other than the specific offense charged ''is introduced *for the purpose of attempting to prove the disposition and tendency of the defendant to commit the acts charged.''* That is the

uniformly recognized ground upon which such evidence is received as competent. (*People* v. *Koller,* 142 Cal. 621 [76 P. 500] ; *People* v. *Koosistra,* 58 Cal.App. 377 [208 P. 316] ; *People* v. *Oliver,* 29 Cal.App. 576 [156 P. 1005] ; *People* v. *Smithle,* 51 CalApp.2d 693 [125 P.2d 553] ; *People* v. *Bell,* 96 Cal.App. 503 [274 P. 393] ; 8 Cal.Jur. § 176, p. 74; Underhill's Criminal Evidence (4th ed.), § 186, p. 341.) Of course it is true that evidence of offenses previously committed by the defendant upon a person, *other than the complaining witness,* may not be received over the objection of the defendant. (*People* v. *Huston, supra.*) No such objection was made in this case.

The court further said in the challenged instruction that this evidence was introduced *"as corroborative evidence to support the one specific offense for which the defendant is being tried."* We think that is a correct statement of the law. In this case there is evidence of other corroborating circumstances tending to show defendant's plan and practice of subjecting the minors to repeated immoral acts, including the specific ones charged in the indictments, which would lead them to become delinquent. In *People* v. *Smittcamp, supra,* upon which the appellant relies, such evidence was held to be competent. The court there said:

"By a long line of authorities it is now established as the law in this state that, in prosecution for sexual offenses, evidence of other like offenses or acts of improper familiarity, illicit intimacy or relations between the parties, prior or subsequent to the act charged in the information relied upon by the prosecution, *is admissible as corroborative evidence where they tend to show a continuous illicit relationship."*

The court further said that:

"As we have indicated herein, evidence of 'other acts' to prove that the parties are adulterously, incestuously or lasciviously inclined *is admitted only as corroborative evidence tending to support the one specific offense for the commission of which the defendant is on trial."* (Italics added.)

The last-italicized portion of the foregoing quotation is exactly what the court told the jury in this case. In the present case the court said that such evidence of other immoral acts could be considered to show defendant's disposition and tendency, and as corroboration in support of the *"specific offense* [of contributing to the delinquency of minors] *for which the defendant is being tried."* The court specifically distinguished those offenses from the felony charges.

In the Smittcamp case, the defendant was convicted of two counts of an information charging him with the offense prohibited by section 288 of the Penal Code. The judgment was reversed on appeal. The criticised instruction declared that testimony of other offenses, "is received and admitted in evidence to prove *the adulterous disposition* of the defendant, and as having a tendency to render it more probable that the act of sexual intercourse charged and relied on in the information was committed, and for no other purposes." We may concede that the mere "adulterous disposition of the defendant" might not be competent evidence to consider upon a charge of a specific sexual crime. But that is not the purport of the challenged instruction in this case. The court did not say that the mere immoral disposition of the defendant could be considered in determining his guilt. It specifically said evidence of other similar offenses was received for the purpose of showing his "disposition and tendency *to commit the acts charged.*" That distinguishes the two instructions under consideration. The instruction complained of is neither erroneous nor prejudicial.

In the Asavis case, *supra,* relied upon by appellant O'Moore, the defendant was convicted of lewd conduct under section 288 of the Penal Code on a female child under the age of 14 years. The judgment was reversed because evidence was received over the objection of the defendant that he had previously committed a similar offense upon *another child* three or four years before the offense occurred for which he was being tried. The court merely determined that the admission of evidence of a prior offense upon *another person* was prejudicially erroneous, under the circumstances of that case. It has no application to the facts of this case. In the Huston case, *supra,* defendant was likewise convicted of lewd conduct upon a 12-year-old child. The judgment was reversed for the same reason that the previously cited case was overruled. The court held that "evidence that defendant has perpetrated similar acts with a person or persons *other than the prosecuting witnesses,*" which was received "over objection," constituted prejudicial error.

Unlike the present case, the foregoing cases were reversed for prejudicial rulings of the courts admitting evidence, over the objections of the defendants, of offenses upon persons other than those named in the informations. The evi-

dence in those cases of other prior offenses upon different individuals had no bearing on the causes being tried, and it was prejudicial. Those cases were properly reversed. They are not authorities which would support a reversal of the present convictions.

We conclude that the judgments of conviction of the misdemeanors charged in this case are supported by the evidence, and that there was no prejudicial error in the. challenged instruction or in the admission of evidence.

We will now consider the separate appeal of the State from the order granting a new trial upon the three charges of felonies under sections .286 and 288a of the Penal Code of which the defendant was also convicted.

The defendant was charged in counts 2 and 3 of the first indictment with the crimes of cunnilingus upon one of the same boys who was also implicated in misdemeanor charges. He was also charged in count 1 of the second indictment with the crime of sodomy upon a different boy who was also implicated in the misdemeanor charge in that same indictment. The court instructed the jury pursuant to section 1111 of the Penal Code, that it could not convict the defendant of said felonies upon the uncorroborated testimony of the named boys who were accomplices in their participation in said crimes. Finally, the court charged the jury with respect to those three felonies, that:

"It is the opinion of this court that there is no corroboration of the testimony of the minor persons named in said counts as required under the law of this state. I therefore advise you to acquit the defendant upon the felony charges alleged in said counts of the said indictments."

But the jury disregarded the instruction and found the defendant guilty of said felonies.

The court, we think, erroneously further instructed the jury that:

"As to the· felonies charged . . . in which the minors involved are accessories, . . . the rules which have been given to you in these instructions *concerning the corroboration of the testimony of the accomplices necessary for a conviction, concerning such evidence of other acts, apply in the same manner and to the same extent as is required for the testimony of accomplices. . . .*" (Italics added.)

Evidence corroborating the testimony of an accomplice is competent if it *tends to connect the defendant* with the specific offense with which he is charged. It is not suf-

ficient if it merely shows the commission of the offense or the circumstances thereof. (Pen. Code, § 1111.) ▮▮▮ Evidence of other offenses committed by the defendant upon the same person involved in the crime of which he is charged is competent for a very different purpose, and without the same limitations which apply to the mere corroboration of the testimony of an accomplice. It is competent, if not too remote, to show the plan, scheme, disposition or tendency of the defendant to commit the offense *with which he is charged.* ▮▮▮ The last-quoted instruction was therefore erroneous. It applied only to the felony charges. But that error was corrected by granting a new trial as to the convictions of the felonies.

▮▮▮ The court granted the new trial as to the felonies on the grounds that the verdicts and judgments were not supported by the evidence and that they were contrary to law. We think the new trial was properly granted. We are convinced there was no abuse of discretion in granting it, under the circumstances of this case. The trial judge has a broad discretion in granting or denying such motions, with which we may not interfere. The attorney general points out certain circumstances and argues persuasively that the record contains some competent corroborating evidence. But the lack of corroboration was not the only reason assigned for granting the new trial.

We are unable to say that the court abused its discretion in granting a new trial on the felony convictions. The trial judge was best qualified to determine the question of the sufficiency of the evidence to support those charges. When there is a reasonable doubt in that regard, we may not substitute our judgment for that of the trial judge. In the case of *People* v. *Sarazzawski,* 27 Cal.2d 7, at page 16 [161 P.2d 934], the Supreme Court said: "[A] trial court can grant a motion for new trial where the evidence is legally sufficient and even where the only evidence is that of the prosecution." In that case the court further states the established rule that a reviewing court will not disturb an order granting a new trial "unless it clearly appears that he abused such broad discretion."

Moreover, it appears that, in spite of the court's advice to the jury to acquit the defendant of the felony charges, he was found guilty, notwithstanding the fact that at least one or two of the felonies involved the same acts and transac-

tions upon which he was convicted of misdemeanors. As to such charges, his conviction of the felonies would result in double penalties for the same offenses, which is prohibited by law. It has been definitely held in recent decisions that a defendant may not be twice punished for the same offense, even though he may have been properly charged and convicted under separate counts when they are dependent upon the same transaction and evidence. (*People* v. *Greer*, 30 Cal.2d 589, 597 [184 P.2d 512]; *People* v. *Esposti*, 82 Cal. App.2d 76, 81 [185 P.2d 866].)

Upon a new trial of the felony charges, if one should occur, we assume that, under appropriate instructions, a double conviction for the same offenses will not occur.

The judgments of conviction on the misdemeanors of contributing to the delinquency of minors and the order denying a new trial thereof are affirmed. The order granting a new trial on the felonies charged in counts two and three of the first indictment, and under count one of the second indictment, is affirmed.

Adams, P. J., concurred.

Defendant and appellant's petition for a hearing by the Supreme Court was denied March 8, 1948. Carter, J., and Schauer, J., voted for a hearing.