[Crim. No. 4256. Second Dist., Div. Two. Dec. 3, 1948.]

THE PEOPLE, Respondent, v. BILLY JOE TAYLOR et al., Defendants; JOHN FERAL GRAY, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of assault with intent to commit rape, after trial before a jury, defendant appeals.

The testimony introduced on behalf of the People disclosed that at about 10 p. m. one evening late in September, 1947, Norma Joyce Sweetwater and Arthur Mae Fulton, aged 13 and 11, respectively, returned from a show at Clearwater, to Norma's home. They remained there until Norma's parents came home at which time Norma obtained permission to spend the night with Arthur Mae. On the way to the Fulton home, the girls met Earl Bevill and Calvin Sistrunk, two boys 15 years of age who accompanied the girls to Arthur Mae's home. The four entered the kitchen of the Fulton house and were drinking coffee when Dolores Fulton, aged 14, the older sister of Arthur Mae, Joanne Kline and two other boys joined them. After the lapse of approximately 10 or 20 minutes there was a knock at the door and Mr. Self asked for Bertha. (Bertha was Bertha Wagner, the mother of Arthur Mae and Dolores Fulton.) Dolores was called to the door and told Mr. Self that Bertha was not there. In fact Mrs. Wagner was asleep in a small building on the rear of the lot upon which the home was located. Self entered the house followed by a man named Taylor and defendant Gray. One of the three last named produced a large bottle of beer and the three commenced drinking from it. Shortly thereafter Norma and Arthur Mae with Calvin Sistrunk and Earl Bevill left the kitchen and went into the front room. Norma and

Arthur Mae then went to the bathroom and had just started to lock the door when defendant Gray pulled it open. He pushed Norma against the wall and asked her if she would go outside and give him something.* He put his arm around her and started pushing her. At first she said no, then she said yes, at which time defendant released her and turned to Arthur Mae.

After Dolores and Joanne had gone to bed the remainder of the company including defendant and Norma went outside to play hide and seek. Defendant came up behind Norma, put his arms around her and started to push her toward the side of the house.

Norma testified that defendant Gray, Self and Taylor took her around the house to a shed in the rear, put her on the floor and defendant had an act of sexual intercourse with her. This, she testified, was then followed by an act of sexual intercourse with Taylor, all of which she said was without her consent. Arthur Mae followed Norma around the house and when defendant and his cohorts pulled Norma into the shed, she went and awakened Dolores who came out to the shed. Defendant and his companions then left.

Jack Mahaylo, a detective sergeant, testified as follows relative to a conversation with defendant on or about December 1, 1947:

"A. At that time I went over the reports which I had from Deputies Metzger and Everley and asked him if he didn't have some statement regarding an incident that occurred at the Wagner home on or about September 20, 1947. I stated that his friend, Mr. Taylor, who had been apprehended with him had made a complete statement to the officers as the report indicated, that at that time Mr. Taylor had observed him getting off the victim—the Indian girl, Norma Jean Sweetwater, and he stated that he might have been there, but he says he couldn't see anything, indicating Taylor couldn't see anything, and I said, 'Let's not kid ourselves and be frank about it. Maybe you didn't see this particular girl but you were on top of her.' He stated that he was on top of her, that he had been drinking quite heavily and that his penis wasn't too hard, that he had it in her vagina and attempted to have an act of sexual intercourse with her, but in view of his alcoholic condition, he was unable to obtain sexual

---

* Norma understood defendant to mean that he wanted to have sexual relations with her when he asked her about going outside and "giving him something."

gratification. Q. That is what Taylor—Grey, told you? A. Yes, sir. Q. Was there any more conversation with Grey that you can recall at this time?

A. I asked him if Taylor had attempted to have an intercourse with the girl and he stated that immediately after he got up off the girl that Taylor got on. I asked him where Self was and he stated somewhere outside the shed. I asked him how did the girl get to the shed and he stated that the girl had taken him by the hand and led him there. I asked him where was he at the time the girl took him by the hand and he stated it was in the rear of the house, by the rear door steps. I said, 'Wasn't the girl forced in there, didn't you fellows carry her in; didn't Self put his hand over the girl's mouth?' 'No,' he said, 'that is not true.' "

Dolores testified that when she entered the shed she saw defendant on top of Norma and that she pulled him off her.

Defendant did not request nor did the trial judge give on his own motion a "cautionary instruction."

## QUESTIONS

First: *Did the trial court commit prejudicial error in not giving to the jury a "cautionary instruction"?*

This question must be answered in the negative and is governed by the following rules of law:

■ (1) In prosecutions for sexual offenses it is error for the trial court not to give a cautionary instruction to the effect that such charges are easily made and difficult to disprove, and that "the testimony of the prosecuting witness should be examined with caution." (*People* v. *Putnam,* 20 Cal. 2d 885, 888, 889 [129 P.2d 367].)

(2) It is the duty of the trial court to give on its own motion a cautionary instruction as set forth under (1), *supra.* (*People* v. *Putnam, supra,* 890 et seq.)

■ (3) Whether the refusal to give a cautionary instruction is *prejudical error* depends on the circumstances of the case. (*People* v. *Putnam, supra,* 892.)

■ Applying the foregoing rules to the facts of the instant case, we are of the opinion that the failure to give a cautionary instruction did not constitute prejudical error since the prosecuting witness's testimony was corroborated by other witnesses and by the admission of defendant to Detective Sergeant Mahaylo wherein defendant conceded that he had been on top of the prosecuting witness. (See *People* v. *Meyers,* 62 Cal.App.2d 24, 29 [144 P.2d 60].) An examination of the

record in the instant case points clearly to defendant's guilt. (See *People* v. *Fleming,* 58 Cal.App.2d 37 [136 P.2d 88].)

*People* v. *Rankins,* 66 Cal.App.2d 956 [153 P.2d 399], is distinguishable from the present case for the reason that in the cited case the (a) testimony of the prosecuting witness was uncorroborated, (b) evidence was sharply conflicting, and (c) appellate court was of the view that had a cautionary instruction been given the jury might have reached a different verdict. In the present case the foregoing elements are absent and the facts fall within the rule announced in *People* v. *Fleming, supra.*

 Second: *Was the evidence insufficient to sustain the judgment of guilty because the complaining witness's story was inherently improbable due to certain discrepencies in her testimony and her inability to identify all the persons present at the time of the crime?*

This question must be answered in the negative. There is nothing inherently improbable in the story told by the prosecuting witness. The fact that she could not identify all the persons present at the time of the alleged offense is readily explained by the fact that it was dark and foggy at the scene of the crime.

Third: *Did the acquittal of defendant on four counts, two of rape, one of assault by means of force likely to produce great bodily injury and one of kidnapping compel the conclusion that the judgment convicting him of attempt to commit rape was predicated upon a compromise verdict?*

This question must likewise be answered in the negative. A judgment of guilty on some counts and not guilty on others does not necessarily give rise to the presumption or suspicion that the verdict of the jury was a compromise.

Where the record shows there is substantial evidence to sustain the verdict of the jury there can be no suspicion of a compromise. (*People* v. *Stangler,* 18 Cal.2d 688, 696 [117 P. 2d 321].) In the present case, since there was ample evidence to sustain the judgment of guilty, the fact that defendant was acquitted of other charges is immaterial so far as the sustaining of the present conviction is concerned.

 Fourth: *In view of the fact that Taylor and Self were also charged with the same offenses as defendant and were acquitted, was defendant entitled to an acquittal on all the charges against him?*

This question must also be answered in the negative. The fact that certain defendants may escape conviction for their

crimes is not any legal or logical reason why another defendant, where substantial evidence has been introduced to sustain his conviction, should be exonerated and be permitted to escape punishment for his crime. ▆ Each count in an information or complaint which charges a separate or distinct offense must stand upon its own merit and the disposition of one count has no effect or bearing on the verdict with respect to other counts contained in the information or complaint. (*People* v. *Carothers*, 77 Cal.App.2d 252, 254 [175 P.2d 30].) ▆ Likewise where there is more than one defendant in a criminal action the innocence or guilt of each must depend upon the evidence introduced against him and if convicted the lack of evidence or the miscarriage of justice insofar as his codefendant is concerned is immaterial.

The judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1948.